**UNITED STATES of America**

v.

**Nelson G. GROSS, Appellant.**

**No. 79–2010.**

United States Court of Appeals,
· Third Circuit.

Argued Jan. 8, 1980.
Decided Feb. 7, 1980.

**366**

F. Lee Bailey (argued), Kenneth J. Fishman, Boston, Mass., for appellant.

Robert J. Del Tufo, U. S. Atty., Newark, N. J., for appellee; Maryanne T. Desmond (argued), Chief, Appeals Division, Asst. U. S. Atty., Newark, N. J., on brief.

Before SEITZ, Chief Judge, ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

Nelson Gross appeals for the second time the district court's denial of a writ of coram nobis. In the first appeal, we vacated the order of the trial court and remanded for a full evidentiary hearing on Gross's allegations of misconduct on the part of government marshals in their dealings with a sequestered jury.[1] After an extensive hearing the district judge found that a deputy marshal had acted improperly, but that his behavior was neither of such character nor of such magnitude as to justify issuance of the writ. We now affirm.

The purported evidence of improprieties was discovered more than two years after the affirmance of Gross's conviction[2]

1. *United States v. Gross,* No. 78–1360 (3d Cir. Nov. 6, 1978) (unpublished per curiam), *order reported* at 588 F.2d 824.

2. *See United States v. Gross,* 375 F.Supp. 971 (D.N.J.1974), *aff'd,* 511 F.2d 910 (3d Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975). In the previous appeal this court affirmed the district court's holding that it did not have jurisdiction over Gross's Rule 33 motion based on newly discovered evidence, because it was not made within two years of the date of final judgment. *See United States v.* *Gross,* 446 F.Supp. 948, 952–53 (D.N.J.1978), *aff'd on this issue,* No. 78–1360 (3d Cir. Nov. 6, 1978). Final judgment has been defined as the date when the appellate court issues its mandate affirming the conviction. *United States v. White,* 557 F.2d 1249, 1250–51 (8th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *United States v. Granza,* 427 F.2d 184, 185 n. 3 (5th Cir. 1970); *Casias v. United*

and after his sentence had been served and his parole supervision terminated.[3] Consequently, relief under Fed.R.Crim.P. 33 or under habeas corpus, 28 U.S.C. § 2255, was not available.

The bases for the petition for writ of coram nobis were statements in an affidavit of Leon Stacey, a former Deputy United States Marshal. Stacey alleged that, while assigned to guard the sequestered jurors, he developed during the first week of the trial a romantic involvement with one of the female jurors which continued until shortly after the trial ended. He further alleged that in the course of his "romancing" he sought to influence her verdict by telling her that the defendant would, if convicted, receive no more than a fine. Two other marshals were claimed to have competed for the affections of another juror and to have attempted similar influence.

At the first hearing on the petition, the district court heard testimony in camera from Stacey, from the current marshal, and from the stenographer employed in preparing the affidavit. The court determined that the manner in which the affidavit was prepared raised doubts as to its credibility,[4] that Stacey's motives were suspect,[5] and "that all allegations of misconduct during the pendency of the trial [were] false." [6]

On the first appeal we concluded that a more extensive hearing was necessary because the district court should not have assumed that once it had "discredit[ed] Stacey's allegations regarding frequent instances of prolonged romantic encounters between himself and a female juror, similar 'trysts' between Marshal Service officers and another female juror, and instances in which he attempted to influence directly the juror's deliberations on Gross's guilt or innocence, there was no necessity for further judicial inquiry into this case." We held that "inasmuch as there was other evidence offered here suggesting romantic involvement between sequestered jurors and the officers of the court assigned to supervise their sequestration, a full evidentiary hearing on the issue of juror prejudice was in order." *United States v. Gross,* No. 78–1360, slip op. at 5 (3d Cir. Nov. 6, 1978), *order reported* at 558 F.2d 824.

At the hearing held pursuant to our remand, testimony was adduced from sixteen witnesses, including five jurors, two deputy marshals, the chief deputy marshal, the former marshal, a deputy clerk who had been a matron assigned to the jury, two FBI agents who had participated in an investigation of the Marshal's office, and four other witnesses. Each relevant witness denied that he or she had heard or observed any discussions relating to the Gross trial between any deputy marshal and any juror.

After hearing much contradictory testimony the trial judge concluded that Stacey's story was substantially fabricated, al-

---

*States,* 337 F.2d 354, 356 (10th Cir. 1964); *Smith v. United States,* 109 U.S.App.D.C. 28, 31, 283 F.2d 607, 610 (D.C. Cir. 1960), *cert. denied,* 364 U.S. 938, 81 S.Ct. 387, 5 L.Ed.2d 369 (1961).

3. Gross was convicted of conspiracy to defraud the United States, aiding and assisting the filing of a false tax return, obstruction of justice, and subordination of perjury. *See id.* His sentence, as later reduced, was to imprisonment for a year and a day. After serving five months of the sentence, he was released on parole, supervision of which ended June 1, 1977. Because he was no longer "in custody" when the present motion was filed, no jurisdiction for habeas corpus existed.

4. The judge ascertained that Gross had paid all expenses of Stacey's trip from California to New Jersey to prepare the affidavit during the course of a two-day meeting. Stacey had ad-

mitted that the wording of the affidavit "was primarily the creation of [Gross]," and that several key statements as well as the name of the juror with whom Stacey allegedly became friendly were supplied by Gross. *United States v. Gross,* 446 F.Supp. 948, 954 (D.N.J.), *vacated and remanded,* 588 F.2d 824 (3d Cir. 1978).

5. Stacey had been the subject of a magazine story and was to be the protagonist of a book. The alleged improprieties were said to be disclosed at the urging of the author and for the purpose of gaining financial benefit from public attention. Furthermore, there were suggestions of personal animosity between Stacey and other members of the Marshal's service. *Id.* at 954–55.

6. *Id.* at 958.

though there was at least this kernel of truth:

> The forelady of the Gross jury testified that Stacey had annoyed certain female members of the jury. A matron assigned to the jury testified that Stacey mentioned his romantic interest in a certain juror.

> The forelady believed the matter had been reported to the Trial Judge and that Stacey had been removed on account of his behavior. The matron testified that she reported Stacey to the United States Marshal. In fact nothing was reported to the Trial Judge, however, several witnesses confirmed that Stacey had been reported to the Marshal. The Marshal denied knowing about it, while several Deputy Marshals testified that they heard him verbally order Stacey off the Gross jury.

Because the trial judge is completely competent to sift through testimony and make credibility determinations, and because his findings are not clearly erroneous, we decline the petitioner's invitation to make our own findings of fact. The legal question we must therefore decide is whether the behavior found to have occurred requires the conclusion that Gross should have been granted the writ of coram nobis. To focus this legal issue more clearly, it is whether the annoyance of some jurors by a deputy marshal and his expression of romantic interest in a specific juror is a sufficient taint on the proceedings to require coram nobis relief.

■ The interest in finality of judgments dictates that the standard for a successful collateral attack on a conviction be more stringent than the standard applicable on a direct appeal. Behavior that might clearly require a mistrial if brought to the district court's attention at trial, or a retrial if on direct appeal, might not be sufficient to require coram nobis relief.

■ Coram nobis is a remedy infrequently used, and the case law on it is accordingly sparse. The Supreme Court has held that, as an extraordinary remedy, coram nobis should be considered only in circumstances "compelling such action to achieve justice." *United States v. Morgan,* 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954). Issuance of the writ has been said to be limited to "those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914) (dictum). Moreover, "[a]ny proceeding which is challenged by the writ is presumed to be correct and the burden rests on its assailant to show otherwise." *United States v. Cariola,* 323 F.2d 180, 184 (3d Cir. 1963).

Quoting from an opinion dealing with a direct appeal of a conviction, Gross argues that he has met his burden of demonstrating irregularity during the course of the trial, so that the burden shifted to the government to prove that the irregularity was harmless:

> In a criminal case any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). Assuming that the *Remmer* shift in presumptions applies to these proceedings, we hold that the district court correctly emphasized that the presumption shifts only if the improper contact between the deputy marshal and a juror involved *"the matter pending before the jury."* That matter, we held in *United States v. Boscia,* 573 F.2d 827, 831 (3d Cir.), (interpreting *Remmer* ), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978), "is the guilt or innocence of the defendant[ ]."

The trial judge specifically disbelieved the testimony that Stacey had communicated with a juror regarding the substance of the trial itself. The conduct found to have occurred—however improper and reprehensible—was simply "annoyance" of some female jurors and the expression of a romantic interest in one. Because this finding is not clearly erroneous, we affirm the district court's conclusion that Gross did not carry his burden of proving that he was unjustly convicted in an "irregular and invalid" proceeding. The judgment of the district court will accordingly be affirmed.