**GOVERNMENT OF the VIRGIN ISLANDS**

v.

**JOSEPH, Shelly, Appellant.**

**No. 81–2780.**

United States Court of Appeals, Third Circuit.

Argued April 29, 1982.

Decided July 23, 1982.

Joel H. Holt (argued), Holt & Groner, Christiansted, St. Croix, V. I., for appellant.

Ishmael A. Meyers, U. S. Atty., Charlotte Amalie, St. Thomas, V. I. (argued), Eric B. Marcy, Asst. U. S. Atty., Christiansted, St. Croix, V. I., for appellee.

Before GARTH, ROSENN and HIGGIN-BOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

On August 27, 1981, a twelve-person jury sitting in the St. Croix Division of the District Court of the Virgin Islands found Shelly Joseph guilty of one count first degree assault, three counts first degree robbery and one count first degree rape. District Court Judge Raymond T. Finch, sitting by designation, sentenced Joseph on September 16, 1981, to fifteen years on the rape count and ten years to be served consecutively on each of the remaining counts. Joseph filed a timely notice of appeal to the district court's judgment and commitment.

Joseph raises four challenges to his conviction and sentence in this appeal. First, he argues that the trial court erred in permitting a witness to testify that she saw a gun in Joseph's car several months prior to the crime. Second, he asserts that it was error to allow counsel for a co-defendant to testify regarding a confession Joseph gave to the attorney. Third, he alleges that his motion for a new trial should have been granted since certain documents, not offered into evidence at trial, were inadvertently sent to the jury during their deliberation. Finally, he argues that his sentence was improper as he received consecutive sentences for assaulting and robbing the same person.

After considering the briefs and oral argument in this case, we have concluded that the appellant is entitled to a new trial. We do not find reversible error in the appellant's first two allegations. However, despite the substantial evidence against appellant, we are convinced that the submission to the jury of two critical documents, not admitted of record, was so highly prejudicial as to deprive the appellant of a fair trial. We also agree with the appellant that he was improperly sentenced to consecutive terms under Counts I and II of the information. In our view, appellant's assault and robbery of Michael Savage are merged and Joseph can only be sentenced once under Counts I and II.

### I.

On February 22, 1979, in a bloody night of terror, three armed assailants forcibly entered Villa Number Six at the Reef Condominium in St. Croix, Virgin Islands. The time was approximately 12:40 a. m. and a gang of rapists and thieves found a woman at home alone who had just showered in preparation for going to bed. Sneaking up behind the woman, they ordered her to lie face down on the floor, to keep her eyes shut and not look at her assailants or make any sound.

A gun was placed against the side of her head while she was gagged and bound hand-and-foot. Repeated threats and beatings were administered to her while her home was ransacked. Not being satisfied with the jewelry and small amount of cash found at Villa Number Six, two of the assailants lifted the bound victim to her bed where she was raped, tortured and threatened repeatedly. Finally, a knife was placed at her throat and she was covered by a sheet. She was told that if she moved she would be killed. Her assailants then slipped out of her home in further search of "the big money."

Upon leaving Villa Number Six, the three crossed the street and entered Villa Number Thirty-Six. They found there two men, two women and a seven-year-old boy. After beating the villa's owner and terrorizing all of the people present, the assailants bound the occupants. The intruders fled after the telephone rang and one of the victims heard one of the assailants called by a name like "Shaboo." Before departing, the intruders took about $1,000.00 in cash and a number of items such as cameras and jewelry.

The police were called and two officers on patrol, after hearing the radio broadcast, spotted a car speeding along a road usually devoid of late night traffic. In an effort to set up a roadblock, the police pulled their patrol car across the road. The speeding

car struck the police car and careened off the road. The officers pursued the occupants of the car as they fled but failed to catch anyone. One officer believed that he recognized one of the fleeing individuals as Richard Motta.

The evidence introduced at trial against Shelly Joseph was overwhelming. The abandoned auto was a 1974 two-door Chevy Nova registered to Joseph. Property stolen from the two villas was found in the car as well as guns identified as being used in the crimes. A vehicle fitting the description of Joseph's car was observed in the area of the Reef Condominiums prior to the crimes. Seminal stains found on the rape victim's panties matched the blood type of Joseph and Joseph frequently went by the nickname Shabu. Finally, immediately after the crimes took place, Joseph left the Virgin Islands to stay with his grandmother in Antigua, British West Indies.

Charges were filed against Shelly Joseph and two other persons, one of whom was Richard Motta. Motta engaged attorney Edward Ocean to represent him and Ocean flew to Antigua to meet with Joseph. Before leaving St. Croix, Ocean was given a letter of introduction from Reverend Vera Woods. It was this letter and the subsequent confession, signed by Joseph, exculpating Motta which inadvertently were sent to the jury although neither was introduced as evidence at trial. Joseph was arrested by authorities in Antigua and extradited to St. Croix. The government eventually dismissed all charges against Motta and the other co-defendant. As previously noted, Joseph was tried and convicted on all five counts of the government's information filed on August 12, 1981.

## II.

■ Appellant's first ground for appeal relates to the testimony of Lisa Christiansen. Mrs. Christiansen was a friend of Joseph who was called as a government witness and testified that she saw a black gun under the seat of Joseph's car. Joseph's attorney objected to her testimony but was overruled. The district court relied on Rule 404 of the Federal Rules of Evidence and *United States v. Robinson*, 560 F.2d 507 (2d Cir. 1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978),[1] for the proposition that evidence of Joseph's prior possession of a gun was relevant to show the defendant's opportunity to commit armed robbery. On cross-examination, Ms. Christiansen was not able conclusively to identify either of the two guns found in the abandoned Chevy Nova as being the same gun she saw under the car's seat earlier.

Rule 404(b) of the Rules of Evidence provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b). The Notes of Advisory Committee on Proposed Rules indicate that

---

1. In *Robinson*, the Second Circuit affirmed the trial court's decision to admit evidence that the defendant was in possession of a .38 caliber handgun when arrested on the basis that it was probative of his opportunity to participate in the armed robbery in question. The court emphasized that "[t]he duty of weighing the probative value of the gun-at-arrest evidence against its prejudicial effect rested squarely on the shoulders of the experienced trial judge." 560 F.2d at 514. The trial court's Rule 404(b) decision is reviewed under the abuse of discretion standard. 560 F.2d at 515 *citing Construction Ltd. v. Brooks-Skinner Building Co.*, 488 F.2d 427, 431 (3d Cir. 1973). Joseph contends in this case that, since Christiansen could not positively match the gun she saw under the car seat with the guns found in the car after it was abandoned, her testimony should have been excluded. We do not agree, since the prior possession of a gun can be relevant to opportunity even without the subsequent matching up of the gun with the one used in the crime. *See United States v. Ravich*, 421 F.2d 1196 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970) (upholding the admission of the defendant's possession upon arrest of guns and ammunition other than those used in the alleged bank robbery).

Rule 404(b) is not intended as a mechanical solution. Rather, the Rule vests in the trial judge the determination whether the danger of unfair prejudice outweighs the probative value of the evidence. Here, we cannot say that the trial judge's decision to let Ms. Christiansen testify for the purpose of showing opportunity was an abuse of discretion. In any event, on this record it was, at worst, harmless error.

## III.

Edward Ocean, an attorney representing a co-defendant named Richard Motta, learned that Joseph had left the Virgin Islands to stay with his grandmother in Antigua. He secured a letter of introduction from Reverend Vera Woods and went to the home of Joseph's grandmother. He arrived on the morning of June 14, 1980 and presented Joseph's grandmother with Reverend Wood's letter. Joseph was not at home so Ocean left the letter and his hotel address with Joseph's grandmother. Later that afternoon, Ocean was told that Joseph was looking for him. They met in the hotel's restaurant and then moved into a private room.

Ocean clearly advised Joseph that he was representing Motta and read him a copy of the extradition statute. Ocean told Joseph that if he were to be implicated in the Reef crimes he could be subject to extradition to and trial in the Virgin Islands. Joseph said he understood the consequences and proceeded to give Ocean a detailed oral statement admitting his role in the crimes and exonerating Motta. At the conclusion of the meeting, Joseph agreed to sign an alleged confession because he did not "want to see an innocent man pay for a crime he was not involved in."

Approximately a week after Ocean met with Joseph, Ocean filed an affidavit with the court detailing his interview with Joseph. Ocean also mailed a copy of the affidavit and of Joseph's statement to Joseph.

Prior to trial, Joseph's attorney filed a motion *in limine* to prevent Ocean and Reverend Woods from testifying. The basis of the motion was that Joseph's communication with Ocean was protected under the attorney-client privilege and Reverend Woods was excludable under the priest-penitent privilege. The trial judge found that the privilege did not extend to Joseph's communication with either Ocean or Woods.[2] We agree with the trial court that Ocean was not serving as Joseph's attorney when the statement was given and, therefore, it was not error to allow Ocean to testify against Joseph at the trial.

Joseph's counsel concedes that Ocean at no time represented Joseph. His argument is "that counsel for a co-defendant cannot testify as to information obtained from a co-defendant in preparation for trial, as that testimony violates the spirit and rationale behind the attorney-client privilege." Appellant's Brief at 10. As we understand the appellant's argument, he is advocating the adoption of what is commonly called the "common defense" rule.

In support of the common defense rule, Joseph relies on two cases, *Hunydee v. United States*, 355 F.2d 183 (9th Cir. 1965) and *United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979). In *Hunydee*, a husband and wife were under indictment for income tax evasion. Separate counsel were employed to avoid any possible conflicts. At a pre-indictment meeting of the two defendants and their respective attorneys, Ms. Hunydee's attorney stated his belief that if Mr. Hunydee would plead guilty Ms. Hunydee would not be prosecuted. Mr. Hunydee conferred with his lawyer and decided to "plead guilty and take the blame." 355 F.2d at 184. At trial Ms. Hunydee and her attorney testified regarding the above conference and Mr. Hunydee alleged a violation of the attorney-client privilege on appeal. The Ninth Circuit found reversible error and stated the following rule:

---

**2.** Reverend Woods testified at the suppression hearing but was not called at the trial. The government agreed not to use the written statement at trial. Thus, the only issue on appeal is the propriety of allowing Ocean to testify at trial.

... where two or more persons who are subject to possible indictment in connection with the same transactions make confidential statements to their attorneys, these statements, even though they are exchanged between attorneys, should be privileged to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings.

355 F.2d at 185, *relying on Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964).

■ Without passing on the viability of the *Hunydee* rule in situations like the one presented there, we note that in our case Joseph did not make a statement to *his* attorney which was then shared with the attorney of a co-defendant. This distinction is significant in that the *Hunydee* holding appears to have been based on the existence of a privileged communication between the defendant and his lawyer which was then extended to a group conversation with the co-defendant and her counsel. Here, Ocean's clear announcement that he was representing Motta precludes any suggestion that there ever existed an attorney-client relationship which was capable of being extended to the conversation between Ocean and Joseph.

Appellant's reliance on the *McPartlin* case is likewise misplaced. In that case a number of business-persons and city officials were indicted for participating in a bribery scheme involving the award of city contracts. Prior to trial, two of the defendants realized that they shared a common interest in attacking the credibility of a particular witness. With the consent of his counsel, the first defendant met with an investigator employed by the other defendant's attorney. The investigator and attorney believed that the first defendant made certain statements which supported the second defendant's defense. When the second defendant attempted to introduce these statements at trial, the first defendant objected on the grounds that they were privileged communications. The trial judge sustained the objection and the Seventh

Circuit affirmed. Judge Tone, writing for the court, concluded that the first defendant's statements were "entitled to the protection of the attorney-client privilege, because his statements were made in confidence to an attorney for a co-defendant for a common purpose related to both defenses." 595 F.2d at 1336.

The basic rationale of the common purpose theory is that, when two co-defendants decide to join in a common effort, "the attorney for each represented both for purposes of that joint effort." 595 F.2d at 1337. It is clear from the facts of our case that Joseph cannot rely on the common purpose theory. Motta's interests were at all times completely antagonistic to the interests of Joseph. Ocean stated that he was representing Motta and advised Joseph of the extradition laws so that Joseph would be aware of the possible consequences of admitting his role in the crime. At no time does it appear that Joseph believed he was participating in a joint defense effort. Rather, he implicated himself to Ocean to exonerate an innocent man who took no part in the crimes.

In conclusion, we believe that the trial judge did not err by allowing Ocean to testify regarding his meeting with Joseph. The purpose of Joseph's statements was to help his friend and co-defendant Motta. To accomplish that purpose it is not unreasonable to infer that the appellant intended his statement be shown to the authorities. We decline to extend the attorney-client privilege to a situation where the defendant did not intend confidentiality and made his statements wholly divorced from an attorney-client relationship.

## IV.

■■ On the day Joseph was to be sentenced, his counsel moved for a new trial on the grounds that two documents not admitted into evidence had inadvertently been sent to the jury. His motion was reduced to writing five days later on September 21, 1981 and amended on October 9, 1981. The

trial court denied Joseph's motion for a new trial on January 11, 1982.[3]

The first item improperly reaching the jury was Joseph's statement, reduced to writing by Ocean and signed by Joseph, which was given in Antigua. The statement was marked as Exhibit 13 and stated:

June 14, 1980

I, Shelley Joseph, have told Attorney Ocean what happened on February 21 and 22 of 1979 with reference to the Reef Condominium Rape-Robbery-Assault in two condominium units. That there were three of us involved in the crime, and Richard Motta was not one of the three. Richard Motta and I had a misunderstanding two or three days before February 22, 1979 and I have not been with him or he with me since that misunderstanding. Richard Motta was last seen by me when I saw him with three other fellows before I joined in with two other fellows regarding the Reef incident.

Shelley Joseph

The second item was the letter written by Reverend Woods and given to Ocean before he left for Antigua. It was marked as Exhibit G and read as follows:

Greeting to you in Jesus name.

This is a Friend,Attorney Ocean,whom I am sending to you;he is here to do you *No Harm*,but please tell him the whole Truth about this matter. You said you would be afraid for me if it is known that I came to look for you. I donnot mind for myself,but I mind for Mr.Motta Son,Richie;who you told me *wasnot* in the Car with you.They have brought him into

Charge and Idonot think it is fair. I think your Heart & Conscience will feel clear. Remember you told me that none of Mr.Mottas Sons were there;and thats just what I said and I had nothing more to say.

I am expecting you to speak the truth since you cannot come back to St.Croix.

The government does not challenge the fact that neither document was introduced at trial and that both were submitted to the jury for consideration. They argue that the motion for a new trial was properly denied because the error was harmless or waived due to Joseph's failure to object. We disagree with both of the government's contentions and hold that the submission of these two documents was so prejudicial as to deprive Joseph of his right to a fair trial.

The basis of the government's waiver argument is that when the prosecutor moved his exhibits into evidence he noted two exceptions which did not encompass either Exhibit 13 or G. Since Exhibit 13 had been marked by defendant's counsel, the government reasons that the failure by counsel to check the exhibits and to object constituted a waiver. Both the defense and the prosecution assert it was sheer inadvertence that the two documents were not removed from the exhibits received by the jury.

 "It is perfectly plain that the jury room must be kept free of evidence not received during trial, and that its presence, if prejudicial, will vitiate the verdict." *Dallago v. United States*, 427 F.2d 546, 553 (D.C.Cir.1969) (footnote and citations omit-

---

**3.** We believe Joseph's new trial motion was based on the ground of newly discovered evidence, and hence was timely filed under Fed.R. Crim.P. 33. *See United States v. Gross*, 614 F.2d 365 (3d Cir.) (per curiam) (implying that evidence of an improper influence on the jury constituted "newly discovered evidence"), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980); 8A J. Moore, *Federal Practice* ¶ 33.07, at 33–55 (2d ed. 1981). *But see Government of the Virgin Islands v. Gereau*, 603 F.2d 438, 441, 16 V.I. 603, 609 (3d Cir. 1979) (motion raising issue of improper pressures placed on jury must be made within seven days after the verdict). As such, the district court had jurisdiction to entertain and deny the

motion, despite the fact that a notice of appeal from Joseph's conviction and sentence had already been filed. *See Government of the Virgin Islands v. Josiah*, 641 F.2d 1103, 1105 (3d Cir. 1981); *United States v. Ellison*, 557 F.2d 128, 132 (7th Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977); *Richardson v. United States*, 360 F.2d 366, 368 (5th Cir. 1966). We are also satisfied that we may consider the denial of Joseph's motion for a new trial as part of the appeal from his conviction and sentence, notwithstanding the fact that no separate notice of appeal was filed from the order denying the motion. *See United States v. Bujese*, 371 F.2d 120, 123 (3d Cir. 1967); *Richardson v. United States, supra*, 360 F.2d at 369.

ted). It is ordinarily the responsibility of counsel to check the exhibits and failure to object in a timely manner can under some circumstances constitute a waiver. *United States v. Burket,* 480 F.2d 568, 571 (2d Cir. 1973); *United States v. Strassman,* 241 F.2d 784, 786 (2d Cir. 1957). As our court recently wrote, "[i]f the exhibits were not intended by the court or the parties to remain in evidence, or were not actually admitted into evidence, appellants cannot now object to their presence in the jury room unless they can show that the court committed 'plain error.'" *United States v. Friedland,* 660 F.2d 919, 928 (3d Cir. 1981), *cert. denied,* — U.S. —, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982). The standard for plain error is whether "the evidence was so prejudicial that the defendant was denied a fair trial." *Id.* (citations omitted).

■ We have concluded that the appellant has met the plain error standard. Undoubtedly, defendant's counsel should have carefully checked each exhibit. However, the prosecutor, who was under the same duty of care, likewise neglected to exclude the improper documents when he moved them into evidence. The highly prejudicial nature of a signed confession and a letter from a minister cannot be doubted. Ocean testified about the circumstances of his meeting and the statement provided unshakeable corroboration that would completely undermine Joseph's efforts to challenge Ocean's credibility.

■ We respectfully disagree with the concurring opinion to the extent that it minimizes the potential impact which the written "confession" or statement could have had on the jury. Before an error can be called harmless the court "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). To brand the submission of this statement as harmless error, we would have to close our eyes to the reality of the factfinding process of juries. With precision and detail, Attorney Ocean testified regarding his meeting in Antigua on June 14, 1980 with Joseph, and much of

that testimony has been included in the concurring opinion. However, the concurring opinion fails to note that, at trial, Joseph was as vehement in denying that there was a meeting as Ocean was in asserting that a meeting took place. Joseph testified that he had "never met with Ed Ocean," and had never seen him at all before Ocean's testimony the morning of the trial. App. at 307. Where there was such a complete factual contradiction about whether the meeting took place, certainly a jury could have believed either Ocean or Joseph. There is no rule in our court that a prosecution witness is entitled to greater credibility than a defendant testifying on his or her own behalf. With this clash of testimony, the missing corroborative link to Ocean's testimony was supplied by the letter. It stated, in black and white for the jury to see and read, that Ocean and Joseph had met on June 14, 1980 and that "I, Shelley Joseph, have told Attorney Ocean what happened on February 21 and 22 of 1979 with reference to the Reef Condominium Rape-Robbery-Assault in two condominium units." Prior to reading this written statement some jurors might have had a reasonable doubt whether Ocean should be believed. But with the written statement before the jury, can we say beyond a reasonable doubt that it was not the last straw which ultimately contributed to the crumbling of the fragile foundation of credibility on which Joseph's defense rested?

Furthermore, the factual pattern here is totally distinguishable from cases such as *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) and *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), which do not involve the improper admission into evidence of a *written* statement or *written* confession of the defendant. Both *Schneble* and *Milton* concerned the testimony of police officers as to *oral* statements made to them by a defendant or by a co-defendant. Neither case involved the improper admission of a signed written statement which corroborated the police officers' testimony. Accordingly, *Schneble* and *Milton* are not relevant au-

thority for the proposition that an improperly submitted *written* statement, corroborating oral testimony at trial, constitutes harmless error.

As to the letter from Reverend Woods, it is still the case in our society that members of the clergy are accorded great respect and deference. Reverend Woods did not testify at the trial. Her letter placed Joseph in the car, it corroborated Ocean's testimony (which Joseph had challenged), and it highlighted Joseph's status as a fugitive by acknowledging that he could not return to St. Croix. Finally, the letter referenced an obvious conversation between Reverend Woods and Joseph from which the inescapable conclusion was that Joseph was present for the crimes and thereby knew that Motta was not. We will not find a waiver when both parties are at fault and the evidence is so highly prejudicial that we can say with confidence the defendant was denied a fair trial.[4]

## V.

Finally, the appellant argues that it was error for the trial judge to sentence him to consecutive terms under Counts I and II of the information. Count I alleged that Joseph violated 14 V.I.C. § 295(3) by assaulting Michael Savage with the intent to commit robbery. Count II alleged a violation of 14 V.I.C. § 1862(2) in that Joseph robbed Michael Savage by means of force or fear by displaying or threatening to use a dangerous weapon.

■■■■■ Our reading of the statutes in question and the relevant cases supports the appellant's view that Counts I and II of the information merge. *See Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1956); *Government of the Virgin Islands v. Reviere*, 670 F.2d 453 (3d Cir. 1982); *Government of the Virgin Islands v. Greenidge*, 600 F.2d 437, 16 V.I. 154 (3d Cir. 1979). "Generally, an offense is a lesser included offense only if it is 'impossible to commit the greater offense without first having

committed [the lesser offense].'" *Greenidge*, 600 F.2d at 440, 16 V.I. at 160, *quoting Government of the Virgin Islands v. Aquino*, 378 F.2d 540, 554, 6 V.I. 395, 421 (3d Cir. 1967). To determine whether an offense is lesser included it is necessary to examine the relevant statutory provisions.

Section 291(2) of the Virgin Islands Code defines assault as follows:

> Whoever—
>
> . . . . .
>
> (2) makes a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery—commits an assault.

Section 295(3), in turn, provides that:

> Whoever—
>
> . . . . .
>
> (3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another—

and is guilty of assault in the first degree. Section 1862(2) defines robbery in the first degree and states that:

> A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another perpetrator of the crime:
>
> (2) Displays, uses or threatens the use of a dangerous weapon.

Our reading of the statutory provisions set out above indicates that a defendant who "Displays, uses or threatens the use of a dangerous weapon" during the course of a first degree robbery must necessarily be guilty of assault as defined by §§ 291 and 295(3). In the words of the *Greenidge* court, it is impossible to commit robbery in the first degree without first committing assault in the first degree. In *Reviere*, our court addressed the relationship between the Virgin Islands robbery and assault sections but left open whether assault is a lesser included offense to robbery. However, the court indicated that, "it is a fair

---

**4.** The government's contention that the letter from Reverend Woods was harmless error is without merit.

inference that the assault with intent to rob provision was enacted to cover the situation where a person assaults another with intent to rob, but is prevented from completing the crime." 670 F.2d at 455 n.2. We now decide the question left open by *Reviere* and conclude that § 295(3) constitutes a lesser included offense of § 1862(2) when all the elements of both offenses are committed against the same individual.

## VI.

We are not unmindful of the fact that this record is replete with substantial evidence against Joseph. It is not surprising that the jury found him guilty of these vicious crimes. We also recognize that the cruelty of these crimes would shock the sensitivity of any civilized person. Yet, our American jurisprudence demands that even the most egregious offender is entitled to have his or her fate decided by an impartial jury, and further, that the jury will have based their judgment solely on the properly admitted evidence of record. In this case, the jury was permitted to take with them to the jury room damaging documentary evidence not admitted into the record. Because the evidence taken to the jury room so thoroughly implicated the appellant, we cannot be certain whether this unadmitted evidence was a decisive factor in the jury's deliberation. They may have decided this case adversely to the appellant primarily because of the signed confession and the letter from Reverend Woods given to them for their final deliberation. We recognize that these documents reached the jury through inadvertence, and that neither the prosecutor nor counsel for the defendant or the deputy clerk of court knew that the jury had these documents during deliberation. But, even though this incident was caused by administrative inadvertence, the appellant's right to due process of law is not to be denied him simply because he may be guilty or because the submission to the jury of unadmitted evidence was inadvertent. A defendant confronting 55 years in prison finds no solace in the fact that he was denied due process by inadvertence, and our jurisprudential system cannot tolerate such grievous injustice simply because there was an abundance of evidence pointing to the defendant's guilt.

This case demonstrates once again that neither counsel nor the clerk can be casual about the submission of documents to the jury; instead this procedure must be carried out as meticulously as any other in the course of a trial. If counsel had paused and carefully checked each document before its final submission to the jury for the latter's deliberation, a new trial would not have been required in this case. We recognize the escalating pressures on trial judges, lawyers and court personnel to move with dispatch in finishing each case as expeditiously as possible. Nevertheless, there is a point where haste or casualness makes waste. Because substantial, though inadvertent, errors were unnecessarily committed, we are left with no alternative but to order a new trial.

Having concluded that the submission of Joseph's signed statement and the letter from Reverend Woods was so prejudicial as to deny appellant a fair trial, we will reverse and remand this case to the district court for a new trial.

GARTH, Circuit Judge, concurring in part and concurring in the judgment.

The majority holds that, despite the disclosure to the jury of Joseph's *oral* confession through the testimony of witness Edward Ocean, the fact that Joseph's *written* statement was inadvertently sent to the jury as an exhibit, constitutes reversible error. This error, together with the improper submission to the jury of the Woods letter, is held by the majority to mandate a reversal of Joseph's conviction.

While I agree that the jury's exposure to the Woods letter must result in a new trial for Joseph, I do not agree that the jury's receipt of Joseph's written statement would require the same result. Nor would I hold that the district court was correct in admitting Lisa Christiansen's testimony respecting the gun she saw in Joseph's car two months before the crimes reviewed here were committed.

### I.

In my opinion, the written statement which was sent to the jury room together with other exhibits, while error, was nonetheless harmless. Attorney Ocean's detailed testimony concerning Joseph's oral confession to having committed the crimes, rendered insignificant any additional harmful impact that Joseph's written statement could have had on the jury. Joseph's brief written statement constituted, in my view, merely harmless cumulative evidence and could not independently have influenced the jury's verdict.

Although as an abstract proposition, not related to the facts of this case, I can agree that "[t]he highly prejudicial nature of a signed confession ... cannot be doubted," Maj. op. at 864, in reviewing the circumstances of this case, it is clearly evident that Joseph's written statement added little to Ocean's damaging testimony. Ocean had testified at length concerning his trip to Antigua during which Joseph admitted his involvement in the crimes at the Reef Condominium. Ocean repeated to the jury in great detail what Joseph had told him about how the crimes were committed.

Ocean testified that Joseph told him that Lorne James and Anthon O'Reilly were involved with Joseph in the Reef crimes. Joseph told Ocean that he was a very good friend of Richard Motta's and knew the Motta family but that three or four days before the Reef incident he had had a "falling out" with Motta and, as a consequence, Motta was not with Joseph, James, and O'Reilly the night of the crimes.

Joseph told Ocean that, on that night, Joseph had had no money and that Joseph, under threats from James, went with James and O'Reilly to the Reef Condominium in Joseph's car. Joseph said the three first drove to James's residence to pick up "tools"—which Ocean interpreted to mean guns and masks. Joseph claimed that only James and O'Reilly had guns at the time of the crime and that Joseph wore a handkerchief over the lower part of his face. Once at the Reef Condominium, all three entered an apartment inhabited by a lone woman.

Joseph admitted raping her under another threat from James while the other two men searched the apartment for money, jewelry, and drugs. The three then proceeded to a second apartment where they tied up and robbed the occupants.

Joseph told Ocean that while making their getaway from the Reef Condominium, Joseph drove past what he thought was a police roadblock, but later lost control of his car and went off the road. The three men then separated. Joseph said he had stayed in St. Croix for two to three weeks after the Reef incident before leaving the island. In all, Ocean's transcribed testimony covered nearly forty pages.

In contrast, Joseph's written statement, which is reproduced in the majority opinion at page 863, consisted of four sentences handwritten by Ocean and signed in two places by Joseph. In essence, the statement did no more than reveal that (1) Joseph told Ocean "what happened on February 21 and 22 of 1979" at the Reef Condominium, but without giving any details; (2) that three individuals were involved, but that Motta was not one of them; (3) that a few days before February 22, Joseph and Motta had a misunderstanding; and (4) that Joseph had last seen Motta with other people prior to the Reef incident. The statement, signed by Joseph, was never admitted into evidence, nor were its contents read to the jury. Through inadvertence, however, the statement was included with the other exhibits that were sent to the jury room.

I have gone into some detail in comparing Ocean's testimony, which has been sustained in this appeal, with the summary statement written by Ocean and signed by Joseph, in order to demonstrate that, compared to Ocean's in-depth testimony, which related all facets of the crime, Joseph's statement had little significance. Indeed, the thrust of the statement had to do with Motta's, rather than with Joseph's, involvement in the crimes. This emphasis in the statement is completely understandable because Ocean had interviewed Joseph not to gather evidence against Joseph but to exonerate Motta. Yet the majority has attrib-

uted to Joseph's conclusory statement involving Motta an importance which, if not placed in proper perspective, might seriously affect the manner in which future courts may regard an issue such as the one here presented, as a precedent.

I do not believe that we must give conclusive weight to a writing, without examining in detail and case-by-case the context in which that writing was considered by the jury. As I have earlier conceded, unquestionably a signed confession can be highly prejudicial and can influence a jury greatly, but I do not believe this statement is of that nature. We should not blind ourselves to the reality of a jury's perceptions in considering a writing such as Joseph's statement under the circumstances here presented.

There is little question but that I would agree with the majority had Ocean's testimony as to Joseph's oral confession been as conclusory as was Joseph's written statement, and the written statement had been as detailed as Ocean's recital. In such a case, I could not conceive that the erroneous delivery to the jury of such a writing implicating the defendant could be deemed harmless error. Conversely, however, I cannot conceive that the written statement that the jury saw after hearing all of the testimony as to Joseph's involvement (giving, of course, regard to Joseph's denials) could be classified as other than harmless error. Indeed, if the only erroneous submission to the jury had been Joseph's written statement, I would not have concurred in reversing Joseph's conviction, for, as I have concluded, that statement without more was harmless error.[1]

In *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), a policeman testified at the defendant's trial to statements made by a co-defendant. The co-defendant did not take the stand and thus was not available for cross-examination. The defendant challenged the policeman's testimony as violative of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in which the Supreme Court held that the admission of a confession of a co-defendant who did not take the stand deprived the defendant of his rights under the sixth amendment's confrontation clause when that confession implicated the defendant. The Court in *Schneble* held that, even if *Bruton* had been violated, the admission of the co-defendant's statements was harmless error in light of police testimony concerning the defendant's confession to having committed the crime.

In explaining its holding, the Court noted that "[the defendant's] confession was minutely detailed and completely consistent with the objective evidence," while "the allegedly inadmissible statements of [the co-defendant] at most tended to corroborate certain details of [the defendant's] comprehensive confession." 405 U.S. at 430–31, 92 S.Ct. at 1059. The Court concluded that "the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony as to [the co-defendant's] admissions been excluded. The admission into evidence of these statements, therefore, was at most harmless error." *Id.* at 432, 92 S.Ct. at 1059 (quoting *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969)). *See also Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (admission of uncounseled confession harmless

---

1. I do not understand the majority opinion to hold that the erroneous submission of a written document to the jury where its substance has already been revealed to the jury and where no objection has been made by defense counsel, constitutes constitutional error, even if it permits review under the plain-error doctrine. In the absence of constitutional error, the appropriate standard for determining whether an error is harmless is found not in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("harmless beyond a rea-

sonable doubt"), the standard employed by the majority, *see* Maj. op. at 864–865, but in Fed.R.Crim.P. 52(a). *See United States v. Carter*, 619 F.2d 293, 295 n.9 (3d Cir. 1980). Rule 52(a) provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In my view, the submission of Joseph's conclusory written statement to the jury did not affect any substantial right once Attorney Ocean had testified. Thus, I would find the error to be harmless.

error in light of three prior admissible confessions by defendant).

The marginal impact of Joseph's written confession can be contrasted with that of the Woods letter, whose submission to the jury the majority correctly holds not to be harmless error. Unlike the written confession, which merely summarized the testimony already given by Ocean, the Woods letter injected an entirely new element into the case, since Woods did not testify at trial concerning the contacts with Joseph that were the source of her remarks in the letter. The impact the Woods letter had upon the jury is suggested by an affidavit of defense counsel filed in connection with Joseph's motion for a new trial. In that affidavit, it appears that a juror told defense counsel Joel Holt that "the jury reached its verdict because of certain letters written from Ms. Vera Woods to Shelly Joseph," and that the juror "was surprised by this evidence because [the jury] had not heard it come in at trial." App. at 31. Because I believe that the differences between Joseph's written statement and the Woods letter are dramatic, I would not, as the majority does, lump the statement and the Woods letter together for purposes of a harmless-error analysis.

## II.

Over objection, the district court permitted Lisa Christiansen to testify that she saw a gun under the front seat of Joseph's car around Christmas, 1978, approximately two months before the crimes were committed. Christiansen, however, could not identify either of the guns used in the crimes as being the gun she had seen in Joseph's car. The district court ruled that the testimony was admissible under Fed.R.Evid. 404(b) to show that Joseph had the *opportunity* to commit the rape and robberies, since he had access to a gun and a gun was used in the crimes.

The majority, in upholding the court's ruling, relies on *United States v. Robinson,* 560 F.2d 507 (2d Cir. 1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978), and *United States v.*

*Ravich,* 421 F.2d 1196 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), in which evidence of the defendants' gun possession long after the crimes were committed was held to be admissible under Rule 404(b). In both of these cases, however, there was a similarity between the guns admitted into evidence and those used in the crimes. In *Robinson,* for example, a .38 caliber revolver seized from the defendant ten weeks after a bank robbery, was admitted into evidence after there had been testimony that a .38 caliber gun and a gun that "looked like" a .38 caliber gun were used in the crime. In *Ravich,* six .38 caliber pistols and .38 caliber ammunition found in the defendants' possession six weeks after the crime were admitted into evidence after an FBI agent testified to having found a .38 caliber bullet on the floor of the getaway car.

Here, in contrast, no connection was ever established between the gun seen in Joseph's car and the guns used in the crimes. The majority, in my opinion, has stretched Rule 404(b) too far, to encompass a situation in which "the danger of undue prejudice outweighs the probative value of the evidence." Fed.R.Evid. 404(b) advisory committee note. Thus, I believe the district court abused its discretion in admitting Christiansen's testimony.

In light of Ocean's testimony about Joseph's oral confession, however, the error in admitting Christiansen's testimony about the gun was harmless. In this respect I agree with the majority. Ocean's testimony respecting Joseph's confession was such devastating evidence of Joseph's guilt that the tangential evidence that was admitted of Joseph's gun possession could not independently have affected the verdict. I write separately on this point, however, only because the issue of the admissibility of Christiansen's testimony may arise again when, as a result of our reversal, Joseph is tried anew. In my view, upon Joseph's retrial, unless a greater nexus can be established between the gun seen in Joseph's car and the guns used in the crimes, the district court should exclude the gun testimony which it admitted.

### III.

As I have indicated, I concur fully in the majority's reversal of Joseph's conviction and in its direction that Joseph be tried anew. I write separately only to express my disagreement with the majority's application of the harmless-error doctrine and with its broad interpretation of admissibility of evidence under Fed.R.Evid. 404(b). These positions taken by the majority, although not necessary to its judgment of reversal, may have unfortunate consequences in future cases in which similar questions may arise.