**UNITED STATES of America,**

v.

**Lollie J. BINKLEY, a/k/a Lollie Graves.**

No. 01–3201.

United States Court of Appeals, Third Circuit.

Submitted March 22, 2002.

Decided June 27, 2002.

Before NYGAARD, ROTH, and AMBRO, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

Lollie J. Binkley appeals her sentencing Under the money laundering guideline,

U.S.S.G. § 2S1.2, rather than the fraud guideline, U.S.S.G. § 2F1.1. She argues that because she merely spent the money obtained by fraudulent means, rather than concealing its illicit origins, her conduct does not fall within the heartland of the money laundering guideline, and instead she should be sentenced under the less punitive fraud guideline. We reverse.

## I.

Because we write for the benefit of the parties, we include only the barest facts necessary for analysis. Binkley and Ruth Streeval, her co-defendant and sister, created false inheritance documents that purported to show that Binkley was the beneficiary of George Earl Markham's estate. On two separate occasions Binkley and Streeval, posing as her attorney, borrowed money on the strength of these false documents. Upon receipt of the loans, Binkley obtained cash as well as a total of ten bank checks and money orders made payable to several of her creditors.

Binkley pled guilty to an indictment charging her with wire fraud, mail fraud, and one count of money laundering in violation of 18 U.S.C. § 1957. At sentencing, she argued that instead of the money laundering guideline, U.S.S.G. § 2S1.2, the Court should apply the fraud guideline, U.S.S.G. § 2F1.1, the range of which is significantly less. The District Court sentenced Binkley to twenty-seven months imprisonment and three years supervised release, near the minimum of the money laundering guideline's range.

## II.

We do not simply apply U.S.S.G. § 2S1.2 automatically whenever there is a conviction for money laundering. Instead we analyze whether the case falls within the heartland of the money laundering guidelines.[1] These include "cases involving typical money laundering, financial transactions that are separate from the underlying crime and that are designed either to make illegally obtained funds appear legitimate, [or] to conceal the source of some funds." *United States v. Diaz*, 245 F.3d 294, 310 (3d Cir.2001). The money laundering cannot be an "incidental by-product" of the underlying fraud. *Id.* Instead, there must be a "serious, concerted effort to conceal or to legitimize" the funds. *Id.* Diaz, the co-owner of a cosmetology school, fraudulently obtained Pell Grants, which were deposited into the school's account. *Id.* at 298. Diaz's conduct failed to meet this standard because she merely transferred fraudulently obtained funds into an account. *Id.* at 311. It was a "simple receipt-and-deposit case." *Id.* at 311. As we observed in *Diaz*: "Of course, the purpose of fraud, in almost all cases, is to obtain money or other property and to put it to some use. A § 1957(a) violation almost always will accompany the commission of such routine fraud." *Id.*

Binkley's money laundering conduct does not evidence a concerted effort to conceal the funds' fraudulent origins. Binkley signed the money orders that she obtained. The bank checks were easily traceable to the issuing bank, which she provided with her name, address, social security number, driver's license number, date of birth, and occupation. This distinguishes the case from *United States v. Omoruyi*, 260 F.3d 291, (3d Cir.2001), where the defendant opened several accounts and used fictitious names to do so. 260 F.3d 291, 301. Binkley left a "paper trail . . . inconsistent with planned conceal-

1. Amendment 591, effective November 1, 2000, overrules *United States v. Smith*, 186 F.3d 290 (3d Cir. 1999), by cabining the discretion of a court to sentence a defendant under a different guideline. However, we do not apply amendment 591 to a case where, although sentencing occurred after the amendment's effective date, the conduct occurred *before* it, thereby raising *ex post facto* concerns. *United States v. Omoruyi*, 260 F.3d 291, 297–98 (3d Cir. 2001).

ment." *United States v. Smith*, 186 F.3d 290, 300 (3d Cir.1999).

As such, she should be sentenced under U.S.S.G. § 2S1.2, and we reverse the District Court's judgment of sentencing.