

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-2003

# USA v. Streeval

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3561

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"USA v. Streeval" (2003). *2003 Decisions.* Paper 355.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/355

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3561

UNITED STATES OF AMERICA

v.

RUTH M. STREEVAL

Ruth Streeval,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 00-cr-00477-2)
District Judge: Honorable Berle M. Schiller

Submitted Under Third Circuit LAR 34.1(a)
June 30, 2003

Before: SLOVITER, AMBRO and BECKER, Circuit Judges

(Opinion filed: July 21, 2003)

OPINION

AMBRO, Circuit Judge

Ruth M. Streeval appeals a jury verdict convicting her of conspiracy, mail fraud, and wire

fraud. She contends the District Court erred in admitting various documents and statements into

evidence against her at trial, and that the evidence was insufficient to support the jury's verdict. We affirm the conviction.[1]

## I.

Because we write solely for the parties, it is unnecessary to recount in full the facts of this case. Streeval and her sister, Lollie J. Binkley, concocted a plan to borrow money against a fictitious inheritance. The pair created documents that represented the estate of George Earl Markham was to be probated in Dekalb County Court in Smithfield, Tennessee. Streeval assumed the identity of "Ruth Johnson, Attorney at Law," executor of the Markham Estate. Binkley claimed to be Markham's granddaughter, due to inherit a large amount of money from his will.

In September 1998, Binkley met with a loan broker at Spitzer Financial in Tucson, Arizona, and applied for a $15,000 loan, stating she would repay the amount from an imminent $25,000 inheritance. Streeval, acting as the attorney Johnson in Tennessee, facilitated the loan approval process in communications with Spitzer via telephone, fax, and postal mail. The funds were disbursed in October 1998, and Binkley paid Streeval $1000 for her efforts.

The sisters repeated the ruse in November 1998. Binkley called J.G. Wentworth SSC Limited Partnership, a Philadelphia company that purchases inheritances. For $40,000, Binkley offered to sell Wentworth $50,000 of the $100,000 she was due to inherit from her alleged grandfather. Binkley again identified Ruth Johnson as Markham's executor, and instructed Wentworth to communicate with Johnson's law office – providing them with Streeval's home phone number and address – to obtain the

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291.

relevant information. Following an exchange of phone calls and correspondence, the money was wired to an account in Tucson. The deception was discovered when an attorney attempted to perfect Wentworth's interest in the Markham Estate and was informed by the Dekalb County clerk's office that no such estate existed.

Following an investigation by the FBI, a grand jury in the Eastern District of Pennsylvania indicted Streeval for conspiracy to commit mail fraud, wire fraud, and money laundering, in violation of 18 U.S.C. § 371 (Count One); two counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two and Three); and five counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts Four through Eight).[2] After a four-day trial, before the case was submitted to the jury, the District Court entered a judgment of acquittal on Counts Three, Five, Six, Seven, and Eight.[3] The jury convicted Streeval on Counts One, Two, and Four. The District Court sentenced her to ten months imprisonment, with the last five months to be served in home confinement with electronic monitoring, three years supervised release, and $55,000 in restitution. She timely appealed.

## II.

Streeval challenges her conviction on four grounds: 1) unauthenticated third-party documents

---

[2]Binkley also was indicted. She pleaded guilty, was sentenced to 27 months imprisonment and three years supervised release, and ordered to pay $55,000 in restitution. We reversed her sentence in *United States v. Binkley*, 2002 WL 1396793 (3d Cir. Jun. 27, 2002), and on remand her term of imprisonment was reduced to time served – approximately 19 months. The rest of her sentence was unchanged.

[3]The District Court initially transferred Streeval's case to the Middle District of Tennessee. We granted the Government's petition for a writ of mandamus directing the District Court to vacate its order and refrain from transferring the case until requisite procedures were followed. *In re United States*, 273 F.3d 380 (3d Cir. 2001). Following an evidentiary hearing, the District Court denied Streeval's motion to transfer.

should not have been admitted; 2) the coconspirator statements of Binkley should not have been admitted; 3) the Government failed to move any of its exhibits into evidence, resulting in insufficient evidence to support a conviction; and 4) her out-of-court admissions to an FBI agent should not have been admitted. None of these arguments is persuasive; indeed, some are borderline frivolous. Nevertheless, we address each separately.

A.

Streeval objected unsuccessfully at trial to the admission of various third-party documents related to the fictitious Markham Estate. For example, the Government introduced a copy of the ostensible "Last Will and Testament of George Earl Markham" that had been faxed by Binkley to Wentworth. Streeval claims that because this and other exhibits that purport to establish the existence of the Markham Estate undisputedly are false, their inherent unreliability disqualifies them from admissibility under the business records exception to the hearsay rule, and they cannot be authenticated. Neither claim has merit.

Whether evidence is hearsay is a question of law subject to plenary review. *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993). "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *Id.* (citing Fed. R. Evid. 801(c)); *see also Anderson v. United States*, 417 U.S. 211, 219 (1974). As correctly noted by the District Court in overruling Streeval's objections, these documents were not being offered to prove the truth asserted therein – *i.e.*, that Streeval was the executor or Binkley a devisee of the Markham Estate. Rather, that the documents were false was the very reason for introducing them: to establish Streeval's participation in the defendants' fraudulent scheme. Statements

4

introduced to prove the false nature of the matter asserted are not hearsay. *See United States v. Adkins*, 741 F.2d 744, 746 (5th Cir. 1984) (citing, *inter alia*, *Anderson*, 417 U.S. at 220). As a consequence, Streeval's claim that the evidence does not qualify under the business records exception to the hearsay rule is irrelevant.

Likewise, Streeval's argument that the fictitious nature of the Markham Estate exhibits precludes their authentication is easily dismissed. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Multiple witnesses testified to receiving and relying upon documents purportedly created by "Ruth Johnson, Attorney at Law," and bearing Streeval's mailing address and phone number. This testimony is sufficient to support a finding that the evidence is what the Government claims: false documents provided to the victims of the fraud.

B.

Streeval's second argument is that the District Court erred in admitting into evidence out-of-court statements made by Binkley and implicating Streeval's participation in their fraudulent scheme. The Court concluded these statements were not hearsay because they were made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Before a statement may be admissible under this rule, the trial court must find by a preponderance of the evidence: 1) a conspiracy existed; 2) the declarant and the party against whom the statement is offered were members of the conspiracy; 3) the statement was made in the course of the conspiracy; and 4) the statement was made in furtherance of the conspiracy. *United States v. Ellis*, 156 F.3d 493, 496 (3d

5

Cir. 1998). We review the District Court's findings as to these elements for clear error. *Id.*

The District Court found each requirement was satisfied. It stated that in making this determination it relied not only on Binkley's statements, but on several pieces of corroborative evidence, *e.g.*, fraudulent documents sent from a fax machine in a store near Streeval's home, fraudulent documents from "Ruth Johnson" that included Streeval's home phone and post office box numbers, and incriminating statements Streeval made to the FBI. Streeval argues all this supportive evidence is inadmissible as well, asserting the documents are unauthenticated and inadmissible hearsay, the statements constitute an uncorroborated and extrajudicial confession, *etc.* We reject each of these claims for reasons explained throughout this opinion. Accordingly, we conclude Streeval has not demonstrated the District Court's findings were clearly erroneous.

C.

Streeval next contends that, because the Government failed to move its trial exhibits into evidence, there was insufficient evidence to convict her. The prosecution, at the close of its trial presentation, stated: "[S]ubject to the moving – the formal moving of the Government's exhibits into evidence, the Government rests." App. at 200-01. It acknowledges it did not subsequently so move, but argues the omission was inadvertent. The Government further notes that Streeval raises this objection for the first time on appeal; indeed, Streeval stipulated at trial to the admission of numerous Government exhibits, agreed certain exhibits be sent to the jury in response to a request made during its deliberations, and even cited many of the same exhibits in her post-trial motion for acquittal.

We accept the Government's assertion that its failure to move its exhibits into evidence was a mere oversight, and that the District Court would have granted the motion if made. Even assuming

6

otherwise, Streeval has not demonstrated reversible error. "It is ordinarily the responsibility of counsel to check the exhibits and failure to object in a timely manner can under some circumstances constitute a waiver." *Gov't of Virgin Islands v. Joseph*, 685 F.2d 857, 864 (3d Cir. 1982). "[I]f the exhibits were not intended by the court or the parties to remain in evidence, or were not actually admitted into evidence, appellants cannot now object to their presence in the jury room unless they can show that the court committed 'plain error.'" *Id.* (internal quotation omitted). This requires demonstrating: 1) error, 2) that was plain, and 3) affected the defendant's substantial rights. *See United States v. Dixon*, 308 F.3d 229, 234 (3d Cir. 2002) (citing, *inter alia*, *United States v. Olano*, 507 U.S. 725, 732, 734 (1993)). In *Joseph*, we reversed the defendant's conviction for assault, robbery, and rape, and ordered a new trial after documents not offered into evidence at trial – including a signed confession – were sent to the jury while deliberating. Any error in this case pales in comparison. The exhibits requested by the jury had been introduced during trial and both parties (and the District Court) assumed they had been properly admitted. Moreover, the jury's receipt of this evidence, even assuming it was error that prejudiced Streeval's substantial rights, it did not "seriously affect[] the fairness, integrity, or public reputation of the judicial proceedings." *Dixon*, 308 F.3d at 234 (quoting *Olano*, 507 U.S. at 734).

We likewise reject Streeval's related claim that there was insufficient evidence to convict her. Because Streeval is appealing an adverse jury verdict, "[w]e must view the evidence in the light most favorable to the government and must sustain [the] jury's verdict if 'a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offense.'" *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001) (quoting

7

*United States v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997)). Streeval's argument – premised on her assertion that no documentary evidence was properly admitted – is that the Government failed to prove various elements necessary to convict her for conspiracy, wire fraud, and mail fraud. The District Court carefully rebutted each of these claims in its denial of Streeval's post-verdict motion for acquittal under Fed. R. Crim. P. 29(c). It explained in detail the substantial evidence introduced by the Government establishing Streeval's guilt, and we agree with this analysis and conclusion. Even assuming the challenged exhibits should not have been submitted to the jury, there was ample testimony upon which the jury could find beyond a reasonable doubt that the Government proved all the elements of the charged offenses. In sum, there was sufficient evidence that Streeval conspired with Binkley to bilk $55,000 from two victims and caused the use of the United States mails and wires in furtherance of the scheme.

D.

Streeval's final argument is that the District Court erred in admitting out-of-court statements she made to FBI Agent Douglas Whitten. Whitten testified that during two interviews with Streeval she told him she agreed to assist Binkley and undertook certain tasks to do so. In her post-trial Rule 29 motion for acquittal, Streeval argued for the first time that these statements were uncorroborated by other evidence and thus inadmissible under *Opper v. United States*, 348 U.S. 84, 91 (1954). We have interpreted the corroboration rule in *Opper* to be satisfied if the witness's recitation of the defendant's admissions "dovetails with the evidence adduced by the other witnesses and is circumstantially corroborated by it." *United States v. Coleman*, 862 F.2d 455, 461 (3d Cir. 1988). While the Government must introduce evidence which would tend to establish the trustworthiness of the

defendant's statements as a whole, it need not offer substantial independent evidence of each element of the offenses charged.  *United States v. Wilson*, 436 F.2d 122, 124 (3d Cir. 1971).

Because Streeval failed to raise this objection at trial, we review the admission of the evidence for plain error.  *See* Fed. R. Crim. P. 52(b).  We conclude the District Court properly admitted Agent Whitten's testimony.  The details of his statements as to Streeval's extrajudicial confession were substantially corroborated by the sizable body of documentary and testimonial evidence.  Furthermore, as noted by the District Court, Streeval had the opportunity to cross-examine Whitten at trial.

* * * * *

For the reasons stated, we shall affirm the judgment of the District Court.

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

 /s/ Thomas L. Ambro
Circuit Judge

9