GOVERNMENT OF the VIRGIN IS-
LANDS, Appellant in No. 80–1703,

v.

JOSIAH, Floyd, Appellant in
No. 80–1571.

GOVERNMENT OF the VIRGIN IS-
LANDS, Appellant in No. 80–1704,

v.

RIOS, Juan, Appellant in No. 80–1572.

Nos. 80–1571, 80–1572, 80–1703
and 80–1704.

United States Court of Appeals,
Third Circuit.

Argued Dec. 11, 1980.

Decided Feb. 25, 1981.

Edward J. Ocean (argued), Christiansted, St. Croix, V. I., for appellant-cross-appellee Josiah.

Allan A. Christian (argued), Frederiksted, St. Croix, V. I., for appellant-cross-appellee Rios.

Ishmael A. Meyers, U. S. Atty., Charlotte Amalie, St. Thomas, V. I., Deborah Watson (argued), Atty., Appellate Section, Criminal Division, U. S. Dept. of Justice, Washington, D. C., for appellee-cross-appellant Government of the Virgin Islands.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Defendants Floyd Josiah and Juan Rios appeal from judgments of conviction entered on counts of second-degree murder, V.I.Code Ann. tit. 14, §§ 921–922 (1964), and of possessing an unlicensed firearm during the commission of a crime of violence, *id.* §§ 2253(a), 2254 (1979–1980 Supp.). The government cross-appeals from judgments of acquittal on the count of kidnapping for ransom or extortion, *id.* § 1052 (1979–1980 Supp.), which were entered by the district court on behalf of Josiah and Rios after the jury found them guilty of this offense.

### I.

Louis Golden, Jr., a seventeen-year-old youth, disappeared on January 31, 1978. His decomposed body was discovered twelve days later. Medical evidence revealed that he had died approximately ten days before his body was discovered. Death was caused by a gunshot wound to his head.

After the authorities conducted an investigation of Golden's death, they concluded that Golden had been kidnapped, beaten, and eventually killed because of a marijuana debt. Rios, Josiah, Elmo Barnes, and two others were charged by information with various criminal offenses relating to Louis Golden's kidnapping and murder. Elmo Barnes' trial was severed from that of Josiah and Rios, and Barnes pleaded guilty to second-degree murder after promising to testify truthfully for the government at the trial of Josiah and Rios. Barnes did testify against Josiah and Rios at their trial, claiming that Rios fired the shot that killed Golden. Josiah and Rios denied involvement in Golden's kidnap or murder. The jury, however, found both Josiah and Rios guilty of second-degree murder, kidnapping for ransom or extortion, and possessing an

unlicensed firearm during commission of a crime of violence.

On appeal, Josiah asserts that his conviction must be overturned because of prosecutorial misconduct at trial and the issuance of an improper arrest warrant. He also seeks a remand to the district court to consider certain claims of prosecutorial misconduct. Rios challenges his conviction of second-degree murder by asserting that there was insufficient evidence to convict. The government cross-appeals the district court's posttrial entry of judgments of acquittal on the count of kidnapping for ransom or extortion.

## II.

Josiah asserts on appeal that his conviction was improperly obtained through prosecutorial use of perjured and coerced testimony. At sentencing, Josiah was instructed by the district court to file motions and supporting affidavits seeking appropriate relief for this alleged misconduct, so that the court could determine the truth of Josiah's contentions and decide, if there was misconduct, whether a new trial was required. Josiah, however, filed a notice of appeal instead of these motions; several weeks later he filed a motion in this court to remand to the district court so that the district court could consider whether the prosecution knowingly used perjured testimony or failed to disclose that it was paying a witness to testify. Josiah also raised the issue of prosecutorial misconduct in his appellate brief.

██ Some of Josiah's contentions appear to be based on a claim of newly discovered evidence, such as information gathered from a posttrial newspaper article and posttrial affidavits. If, however, Josiah desires to file a motion for a new trial on the basis of newly discovered evidence, the motion should be filed first in the district court, even though an appeal has been taken. *See United States v. Phillips,* 558 F.2d 363, 363 (6th Cir. 1977) (per curiam). It is up to the district court in the first instance to determine whether such a motion is actually based on newly discovered evidence and, if

so, whether the evidence supports the motion for a new trial. If the district court is disposed to grant a motion for a new trial, and if a remand is necessary because an appeal is pending, the court should so certify to the court of appeals. *See id.; United States v. Wander,* 465 F.Supp. 1013, 1020 (W.D.Pa.), *appeal from denial of new trial dismissed as moot,* 601 F.2d 1251 (3d Cir. 1979). Otherwise, the district court may deny the motion without remand, at which time the denial may be appealed. Thus, the motion to remand is not properly before us at this time, and is denied without prejudice.

██ Additionally, because the district court was not given the opportunity to address Josiah's assertion that the prosecution used perjured and coerced testimony, and because Josiah moved to remand this issue to the district court, we find that the question of prosecutorial misconduct is not properly before us on appeal. Therefore, we do not address the contentions of prosecutorial misconduct that were raised in Josiah's appellate brief.

██ Josiah also contends that he was improperly arrested because the affidavits supporting his arrest warrant failed to establish the reliability of information supplied by an informant. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). As the Supreme Court has recently stated, however, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980). Because Josiah fails to assert harm other than being brought to court pursuant to an invalid warrant, he cannot attack his conviction on this basis. Therefore, we need not address his contention that his arrest warrant was invalid.

## III.

██ Defendant Rios challenges the sufficiency of the evidence on which he was

convicted of second-degree murder; this challenge is based on testimony given by Elmo Barnes. At trial, Barnes testified that Rios killed Golden, but several times prior to giving his trial testimony, Barnes had admitted killing Golden. For example, Barnes had told undercover agent Clan Jacobs that he "iced" Golden. Barnes had also told a friend, Roosevelt Dowling, that he killed Golden, although he said at that time that Rios and Josiah were present at the shooting. Furthermore, some of Barnes' testimony at trial was inconsistent with a statement he had given police and with testimony given under oath when he entered his guilty plea.

On appeal, Rios claims that the prior statements by Barnes were "conclusive, incontrovertible, strong and convincing so as to overbear all proof to the contrary ..." and that they "established that two different persons could not be responsible for terminating the life of the decedent by shooting him in the head and accordingly created reasonable doubt, so as to preclude the conviction of Juan Rios." Furthermore, Rios asserts that the jury was precluded by these previous admissions from believing Barnes' testimony and relying on it to convict Rios of murder. As a result, he contends, the evidence was insufficient to convict him of murder.

However, the jury was permitted to believe Barnes' testimony. Before the jury retired to deliberate, the district court instructed it that it could consider the prior contradictory statements "to determine whether [Barnes] is a truthful person or not." It also instructed the jury that, as to statements Barnes made under oath at the time he entered his plea, the jury could choose to believe those statements rather than Barnes' trial testimony. The court also instructed the jury that Barnes was a confessed accomplice, and that "the testimony of an accomplice is always to be received with caution and considered by you with great care ...." The court explained that Barnes was an interested witness; it also explained that because his prior sworn testimony conflicted with his trial testimony, Barnes could be charged with perjury.

The court gave these instructions to ensure that the jury "had all the facts" before deciding whose testimony to believe. Once all the facts were before it, the jury was permitted to choose to believe part or all of Barnes' testimony.

Moreover, it was not necessary for the government to prove that Rios actually fired the shot that killed Louis Golden, and thus Rios' conviction does not necessarily show that the jury believed Barnes' testimony that Rios shot Golden. Under the Virgin Islands Code, "[w]hoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." V.I.Code Ann. tit. 14, § 11(a) (1964). Furthermore, such persons "shall be prosecuted and tried as principals, and no fact need be alleged in the information against them other than is required in the information against the principal." Id. § 11(c). The government had to prove that Rios had a " 'purposive attitude' to see the venture succeed," and that he "participate[d] in the criminal endeavor at least to the point of encouraging the perpetrator." See Government of the Virgin Islands v. Navarro, 513 F.2d 11, 14–15 (3d Cir.), cert. denied, 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 698 (1975). As the district court instructed the jury, the jury had to "be satisfied on the evidence that something of significance was done by each of these two men beyond the fact of his mere presence at the scene." Additionally, the jury had to find, at a minimum, that Rios and Josiah aided and abetted each other, even if the jury believed that they also assisted Barnes and that Barnes fired the fatal shot.

The government's evidence at trial was sufficient to support a finding that Rios had at least aided and abetted the killing of Louis Golden. This evidence included not only the testimony of Barnes, but also other testimony, including that of Clan Jacobs, who stated that Josiah had told him that he and Rios had held Golden while Barnes shot Golden twice in the head. Under these circumstances, it was within the jury's province to find beyond a reasonable doubt

that Rios aided and abetted the murder of Louis Golden, Jr., and thus to convict Rios of second-degree murder.

## IV.

At the close of the government's case, Josiah moved for a judgment of acquittal on all counts and Rios moved for a judgment of acquittal on the count of kidnapping for ransom or extortion, V.I.Code Ann. tit. 14, § 1052. The district court denied the motions as to all counts, although it did express some doubt about the sufficiency of the government's evidence supporting the ransom or extortion element of the kidnapping count. At the close of their defense, Josiah and Rios renewed these motions. The district court again denied the motions, but it instructed the jury on both the elements of kidnapping for ransom or extortion and the elements of the lesser-included offense of simple kidnapping, *id.* § 1051, which has no ransom or extortion element. The court instructed the jury that a lesser-included offense is "one which consists of some but not all of the elements of the greater offense which has been charged, and which does not require the proof of any new or additional element to make it out." It then explained:

> If for example, when you come to study the kidnapping charge you find indeed they did kidnap Mr. Golden but you do not find beyond a reasonable doubt that they intended to extort money or exact money or other thing of value from his parents . . ., then you might find them guilty of the lesser included offense, false imprisonment or kidnapping.

The jury returned a verdict of guilty on the greater offense, kidnapping for ransom or extortion.

After the jury verdict was returned, Josiah and Rios renewed their motions for judgment of acquittal. The court requested and received from the government a memorandum regarding (1) the sufficiency of the ransom/extortion evidence and (2) the appropriateness of entering a judgment of conviction on the lesser-included offense of simple kidnapping should the court grant judgments of acquittal on the greater offense. The government memorandum asserted that the evidence supported the guilty verdict of kidnapping for ransom or extortion, and that, in any event, the court lacked authority to enter judgments of conviction on simple kidnapping. The district court then heard arguments on the motions and ruled that the government had failed to show that the defendants kidnapped Golden to extort money from him or to hold him for ransom. The court thus entered judgments of acquittal on the count of kidnapping for ransom or extortion. The judgments were entered without prejudice to the government's right to proceed against the defendants under section 1051.

■ On appeal, the government has altered its position. It no longer contests the district court's determination that the government failed to prove the ransom or extortion element of the crime. It argues instead that when the district court determined that the evidence was insufficient to support a guilty verdict on the count of kidnapping for ransom or extortion, the court should have entered a judgment of conviction on the lesser-included offense of simple kidnapping. Josiah and Rios assert that the government's appeal is barred by principles of double jeopardy.[1]

---

1. Rios also suggests that the government may not raise its contention on appeal after the position it took at trial. In its memorandum to the trial court, the government asserted:

> A trial court cannot direct a verdict of guilty in a criminal case, even if the facts are undisputed. *United States v. Gollin,* 166 F.2d 123 (3d Cir. 1948), *cert den.* 333 U.S. 875 [68 S.Ct. 905, 92 L.Ed. 1151] (1948). It appears that the only action the court may take is to enter a judgment of acquittal of "Kidnapping to Exact Money" and grant a new trial for

"Kidnapping." See *Moore's Federal Practice,* Vol. 8A, Paragraph 29.08(1) p. 29–52.3. Although the government's position may have caused the trial court to rule as it did, a government concession on a question of law is not binding on this court. *See, e. g., United States v. Tortorello,* 533 F.2d 809, 812 (2d Cir.), *cert. denied,* 429 U.S. 894 [97 S.Ct. 254, 50 L.Ed.2d 177] (1976) (prosecution's possible concession at trial that defendant had standing to challenge search a concession as to question of law and therefore not binding on court). Therefore,

We address first the double jeopardy implications of this appeal. The Supreme Court has recently reiterated that the question of double jeopardy focuses "not on the appeal but on the relief that is requested." See United States v. DiFrancesco, —— U.S. ——, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). As the Court said in United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), "where a government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended." Id. at 569–70, 97 S.Ct. at 1353. It is for this reason that a government appeal of a judgment of acquittal violates the double jeopardy clause when reversal would require a second trial, but that no such violation is thought to occur when a retrial would not be required. See United States v. Scott, 437 U.S. 82, 91 & n.7, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).

In applying these principles, we have noted that the double jeopardy clause is not offended when the government appeals a postverdict judgment of acquittal if reversal on appeal would merely reinstate the jury verdict. See United States v. Schoenhut, 576 F.2d 1010, 1018 n.7 (3d Cir.), cert. denied, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978); United States v. Cahalane, 560 F.2d 601, 603 n.2 (3d Cir. 1977), cert. denied, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). This is so because the defendant "will not twice be tried and thus will not twice be put in jeopardy for the same offense." See Schoenhut, 576 F.2d at 1018 n.7. In this case the government does not seek a new trial; it seeks entry of judgments of conviction on a lesser-included offense after the jury has found the defendants guilty of all the elements of the greater offense. Like an appeal in which the government seeks full reinstatement of the jury's verdict, principles of double jeopardy are not offended in this situation. Therefore, this appeal is not barred by double jeopardy.

We turn now to the government's assertion that the district court should have entered judgments of conviction on the offense of simple kidnapping (section 1051) when it determined that the evidence was insufficient to support the ransom or extortion element of section 1052. Since only the evidence supporting the ransom or extortion element was insufficient, the government contends that the jury's finding of guilt on all the other elements—which would support a verdict of guilt on simple kidnapping—should be given effect through judgments of conviction.

A jury's finding of guilt on all elements of the greater offense is necessarily a finding of guilt on all elements of the lesser offense, since a lesser-included offense consists of some of the elements of the greater offense and does not require the proof of any element not present in the greater offense. See United States v. Swiderski, 548 F.2d 445, 452 (2d Cir. 1977). A trial court therefore has authority to enter a judgment of conviction on a lesser-included offense when it finds that an element exclusive to the greater offense is not supported by evidence sufficient to sustain the jury's finding of guilt on the greater offense. See United States v. Cobb, 558 F.2d 486, 489 (8th Cir. 1977); United States v. Ciongoli, 358 F.2d 439, 441 (3d Cir. 1966) (insufficient evidence supporting aggravating circumstances).

When the evidence is insufficient to support the greater offense, but sufficient to support a conviction on the lesser-included offense, an appellate court may vacate the sentence and remand for entry of judgment of conviction and resentencing under the lesser-included offense. See United States v. LaMartina, 584 F.2d 764, 767 (6th Cir. 1978) (per curiam), cert. denied, 440 U.S. 928, 99 S.Ct. 1263, 59 L.Ed.2d 483 (1979); Austin v. United States, 382 F.2d 129, 142 (D.C.Cir.1967); 28 U.S.C. § 2106 (1976). The trial court, however, has already vacated the defendants' sentences under the section 1052 offense. We therefore

we will address the government's contention on appeal that judgments of conviction on the

lesser-included offense should have been entered.

remand to the district court to enter judgments of conviction on the lesser-included offense of kidnapping, V.I.Code Ann. tit. 14, § 1051, and to sentence the defendants appropriately.

### V.

In conclusion, we hold that the contentions regarding prosecutorial misconduct are not properly before us at this time, that Josiah may not attack on appeal the validity of his arrest warrant, and that the evidence at trial was sufficient to sustain Rios' conviction of second-degree murder. We also hold that when the district court entered judgments of acquittal on the count of kidnapping for ransom or extortion, it should have entered judgments of conviction on the lesser-included offense of simple kidnapping.

### VI.

The judgment of the district court will be affirmed. We remand to the district court, however, to enter judgments of conviction on the offense of simple kidnapping, V.I. Code Ann. tit. 14, § 1051, and to sentence the defendants appropriately.