906 P.2d 612

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Siaosi MALUFAU, Defendant–Appellant.**

No. 17867.

Supreme Court of Hawai'i.

Oct. 18, 1995.

Order on Reconsideration Nov. 30, 1995.

R. Richard Ichihashi, on the briefs and on the motion for reconsideration, Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Defendant–Appellant Siaosi Malufau appeals from his conviction, after a jury trial, of assault in the first degree under Hawai'i Revised Statutes (HRS) § 707–710(1) (Supp. 1992).[1] Malufau filed this timely appeal after the circuit court denied his motion for judgment of acquittal, or in the alternative for a new trial, on January 4, 1994. Based on the following, we vacate and remand.

## I.

Rufus Mountford, Ramona Ai, and another woman named "Tammy" were seated at a booth in Leon's Arctic Bar on June 20, 1990, when Malufau approached and asked Ramona to dance with him. Ramona agreed but about halfway through their dance, she got upset and stomped back to the booth. Malufau came over to apologize, but Ramona refused to dance with him anymore. Malufau then sat down and started to "hit" on Tammy. It was apparent to Mountford, Ramona, and Tammy that Malufau was drunk. In order to avoid any problems, Mountford ignored Malufau, who left the booth about twenty minutes later.

When the bar closed, Tammy offered to cook breakfast for Ai and Mountford, and all three proceeded to walk down Mokauea Street toward Tammy's apartment. Tammy noticed that Malufau was following them and alerted Mountford. Mountford turned and saw Malufau hiding behind a Coca–Cola vending machine with a bottle in his hand. When Malufau came closer, Mountford told him that it was a private party and asked him to leave them alone. The next thing Mountford knew was that he was lying on the ground, his head was spinning, and he could feel a warm liquid on himself. Although Mountford could not move or open his eyes, he felt himself being kicked repeatedly in the left shin, right thigh and chest area.

When the police arrived, they took Mountford to St. Francis Hospital where he was examined by John Walczak, M.D. Dr. Walczak removed two pieces of amber glass from a two-inch gash on the right side of Mountford's forehead and closed the wound with five stitches. When Mountford saw Malufau again at the bar on July 7, 1990, he quickly summoned the police, whereupon Malufau was arrested and charged with assault in the first degree.

At trial, Dr. Walczak testified, over a relevancy objection by the defense, that without treatment Mountford would have likely suffered "serious permanent disfigurement."[2] He further opined that without treatment the wound probably would have become infected, particularly because of the foreign bodies found therein, and that the resulting scar would have been larger than usual. Finally, Dr. Walczak testified that any scar that is visible at a normal social distance would amount to a disfigurement.

## II.

Malufau contends (1) that the circuit court erred in allowing Dr. Walczak to testify

---

1. HRS § 707–710(1) provides that "[a] person commits the offense of assault in the first degree if he [or she] intentionally or knowingly causes serious bodily injury to another person."

2. HRS § 707–700 (1993) defines "[s]erious bodily injury" as "mean[ing] bodily injury which creates a substantial risk of death or which causes *serious, permanent disfigurement*, or protracted loss or impairment of the function of any bodily member or organ." (Emphasis added.)

 A less serious classification, "substantial bodily injury," consists of "bodily injury which causes ... [a] major avulsion, laceration, or penetration of the skin[.]" HRS § 707–700. A person who "intentionally or knowingly causes substantial bodily injury to another" commits the offense of assault in the second degree. HRS § 707–711(1)(a) (1993).

 The least serious classification of "bodily injury" includes "physical pain, illness, or any impairment of physical condition." HRS § 707–700. *See* HRS § 707–712(1)(a) (1985) (establishing that a person commits the offense of assault in the third degree if "he [or she] ... [i]ntentionally, knowingly, or recklessly causes bodily injury to another person[.]").

about what would have happened if Mountford's wounds had not been treated, and (2) that there was insufficient evidence of a serious, permanent disfigurement to support his conviction of assault in the first degree. We agree with both of Malufau's contentions.[3]

### A.

Pursuant to Hawai'i Rules of Evidence (HRE) Rule 402, "[e]vidence which is not relevant is not admissible." Thus, the first issue in the instant appeal is whether Dr. Walczak's testimony regarding the severity of the injuries that Mountford would have sustained in the absence of treatment was relevant.

■ HRE Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." On appeal, "the question of whether evidence is relevant under HRE Rule 401 is reviewed under the right/wrong standard." *State v. Toro*, 77 Hawai'i 340, 347, 884 P.2d 403, 410 (App.), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994).

Whether a particular fact "is of consequence to the determination of the action" in criminal cases will often turn on the elements of the offense. *See, e.g., State v. Alston*, 75 Haw. 517, 539–40, 865 P.2d 157, 168–69 (1994) (relying on (1) the meaning of the "threaten" element of the offense of terroristic threatening and (2) the fact that actual terrorization is not an element of the offense

in holding that evidence of a threat that was never communicated to the person against whom it was made was nonetheless relevant in a prosecution for terroristic threatening); *State v. Pinero*, 75 Haw. 282, 289–90, 859 P.2d 1369, 1373 (1993) (relying on meaning of the "arising out of the performance of official duties" element of the offense of first degree murder in holding that evidence regarding the existence of a search warrant was not relevant in prosecution for first degree murder). Thus, we must examine the elements of the offense at issue in the instant case.

HRS § 707–710(1) defines the offense at issue, providing that "[a] person commits the offense of assault in the first degree if he [or she] intentionally or knowingly causes serious bodily injury to another person." The sole "element" of this offense is a result of conduct. *See* HRS § 702–205 (1993).[4]

■ When the definition of an offense includes the result of conduct as an element of the offense, the prosecution bears the burden of proving beyond a reasonable doubt that the specified result actually occurred. *See* HRS § 701–114 (1993).[5] In a murder case, for example, it is intuitively obvious that the prosecution must prove that the victim actually died. In such a case, proof that an accused's conduct would have caused the death of the victim if the victim had not received medical attention would not be relevant to prove that the accused, in fact, caused the death of the victim; only evidence that the death of the victim actually resulted from the accused's conduct would be relevant. Thus, when a result of conduct is an

---

3. Because we vacate Malufau's conviction on this basis, we need not address Malufau's remaining argument that the circuit court erred in restricting his cross-examination of Dr. Walczak on the distinction between "disfigurement" and "serious, permanent disfigurement."

4. HRS § 702–205 provides:
The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
(a) Are specified by the definition of the offense, and
(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

5. HRS § 701–114 provides:

**Proof beyond a reasonable doubt.** (1) Except as otherwise provided in section 701–115, no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
(a) Each element of the offense;
(b) The state of mind required to establish each element of the offense;
(c) Facts establishing jurisdiction;
(d) Facts establishing venue; and
(e) Facts establishing that the offense was committed within the time period specified in section 701–108.
(2) In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.

element of the offense charged, proof that the result would have occurred but did not because of some intervening event is irrelevant to that charge.

■ Hence, in order to convict Malufau of assault in the first degree, the prosecution was required to prove beyond a reasonable doubt that "serious bodily injury" to Mountford actually resulted from Malufau's conduct. "Serious bodily injury" is defined in HRS § 707–700 as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

In the instant case, the prosecution sought to prove that Malufau inflicted an injury that caused "serious, permanent disfigurement." The question thus becomes whether expert medical testimony regarding what the severity of the injury would have been absent medical attention is relevant to whether an injury actually caused "serious, permanent disfigurement." Based on our conclusion that proof that a result would have occurred but did not because of intervening events is irrelevant when that result is an element of the offense, we hold that such expert medical testimony is not relevant to prove "serious, permanent disfigurement." [6]

Thus, we hold that the circuit court erred in admitting Dr. Walczak's testimony regarding what the severity of Mountford's injuries would have been if Mountford had not received medical attention because the testimony was irrelevant to the charged offense under HRE Rule 401 and, thus, inadmissible to prove the element of serious bodily injury under HRE Rule 402.

■ Having held that the circuit court erred in admitting Dr. Walczak's irrelevant testimony, we must consider whether the error prejudiced Malufau, for "even where error occurs, there will be no reversal where on the record as a whole no prejudice to the defendant has resulted[.]" *State v. Nakamura,* 65 Haw. 74, 80, 648 P.2d 183, 187 (1982) (citation and quotation marks omitted). *See also* Hawai'i Rules of Penal Procedure Rule 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

In *State v. Suka,* 79 Hawai'i 293, 901 P.2d 1272 (Haw.Ct.App.1995) (citation and quotation marks omitted), *cert. denied,* 79 Hawai'i 341, 902 P.2d 976 (1995), the Intermediate Court of Appeals (ICA) held that, when an error is not of constitutional magnitude, ordinarily,[7] "[t]he harmless error standard under HRPP Rule 52 requires that the court examine the entire record to determine whether the error itself had substantial influence upon the jury's verdict." *Suka,* 79 Hawai'i at

---

6. This is not to say that all expert medical testimony is irrelevant in proving that an injury caused "serious, permanent disfigurement." For example, expert medical testimony would certainly be relevant to describe the actual disfigurement and to establish that it was permanent. Similarly, when the prosecution seeks to prove that an injury caused "protracted loss or impairment of the function of any bodily member or organ," expert medical testimony will be relevant to prove the "loss or impairment" and establish that it was "protracted."

Furthermore, when the prosecution seeks to prove that an injury "create[d] a substantial risk of death," expert medical testimony regarding the risk of death that the defendant's actions created would clearly be relevant. In this context, evidence regarding what the severity of the injuries would have been absent medical attention is relevant, but only to the extent that it relates to the risk of death that the defendant's actions created.

Finally, we recognize that expert medical testimony regarding what the severity of a person's injuries would have been absent medical attention could be relevant to prove that a defendant committed the offense of attempted assault in the first degree by "intentionally engag[ing] in conduct which [was] a substantial step in a course of conduct intended or known to cause" serious bodily injury. *See* HRS §§ 705–500(2) (1993), 707–710(1). We further note that when such evidence is admitted to prove that a defendant committed the offense of attempted assault in the first degree, the defendant will be entitled to a limiting instruction, *see* HRE Rule 105, to ensure that the jury understands that the evidence cannot be used to establish that "serious, permanent disfigurement" actually occurred. In the instant case, however, because the jury was not instructed on the included offense of attempted assault in the first degree, Dr. Walczak's testimony was not relevant to any issue before the jury.

7. The ICA recognized that there exist "a limited number of rights, not of constitutional magnitude, but the violation of which has been deemed never to be harmless." *Suka,* 79 Hawai'i at 298, 901 P.2d at 1277 (citations omitted).

300, 901 P.2d at 1279 (citation and quotation marks omitted). The ICA contrasted this standard with the "harmless beyond a reasonable doubt" standard, which it held was applicable only to violations of constitutional rights. *Id.* at 298, 300, 901 P.2d at 1277, 1279. "In applying the harmless beyond a reasonable doubt standard the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *Id.* at 294, 901 P.2d at 1273 (citation and quotation marks omitted). Because a defendant may not be convicted of an offense except upon proof establishing his or her guilt beyond a reasonable doubt, we question whether a standard more lenient than the harmless beyond a reasonable doubt standard is ever appropriate in criminal cases. Nevertheless, we need not resolve that question in the instant case because the admission of Dr. Walczak's irrelevant testimony could not be considered harmless even under the more lenient standard.

■ Under either standard, as a general rule, "[w]here there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless." *State v. Rivera*, 62 Haw. 120, 127–28, 612 P.2d 526, 532 (1980) (citations omitted). The case of *State v. Yamashiro*, 8 Haw.App. 595, 817 P.2d 123 (1991), is a case in which there was such "a wealth of overwhelming and compelling evidence." In *Yamashiro*, the victim of an alleged assault suffered extensive facial injuries, including two fractures to his left cheek bone and one to his right, which, according to one of his doctors, *"would have* [resulted in] serious permanent disfigurement to his face" if corrective surgery had not been performed. 8 Haw.App. at 598, 817 P.2d at 125 (emphasis added). Although the admissibility of this testimony of the doctor was not challenged in *Yamashi-*

*ro,* under the analysis set forth above, the testimony was clearly irrelevant.[8]

There was, however, considerable other evidence presented at trial to prove that Yamashiro caused "serious bodily injury." A surgeon testified that the victim: suffered from numerous loose, broken, or displaced teeth and multiple fractures to his lower jawbone that had exposed the root of his right eyetooth; at the time of trial, had pain and a clicking sound in his right jaw joint and still lacked feeling on the left side of his face; and would require further dental work, including the extraction of seven or eight teeth or bridge work. In addition, the victim testified that the sense of feeling had never returned to the left side of his face. As a result, he could not tell if his nose was running until the mucous entered his mouth. When he blinked or smiled he could feel that some bone was missing. He was also unable to eat hard foods, such as apples, because his teeth were loose.

The victim further testified that his face was "lopsided" and that there was a lump of scar tissue on his lip. According to his surgeon, the corrective surgery "helped to retard this disfigurement." *Id.* at 598, 817 P.2d at 125. In other words, although the disfigurement was not as bad as it might have been without reconstructive surgery, it was still both serious and permanent. Finally, a photograph of the victim taken prior to the incident was admitted in evidence, over the defendant's objection,[9] to enable the jury to determine the extent of his disfigurement.

In light of all of the evidence presented, the ICA held that

[t]he evidence and justifiable inferences, considered in the most favorable light for the State, were clearly sufficient to enable a reasonable mind to fairly conclude beyond a reasonable doubt that the injuries suffered by the victim constituted "protracted loss or impairment of the function of [a] bodily member or organ" and/or

---

8. To the extent that the *Yamashiro* court's apparent reliance on the doctor's testimony regarding the potential severity of the victim's injuries absent medical treatment could be construed as a tacit approval of such testimony, we disapprove of *Yamashiro.*

9. The defendant did not, however, argue on appeal that the court erred in admitting the photograph.

serious permanent disfigurement to his face under HRS § 707–700.

8 Haw.App. at 602, 817 P.2d at 127. Given the wealth of evidence tending to establish "serious bodily injury" in *Yamashiro,* we do not believe that there was a reasonable possibility that the erroneous admission of the doctor's irrelevant testimony could have contributed to the jury's verdict.

■ In the instant case, on the other hand, the only evidence in the record describing Mountford's scar established that it was located on his forehead, was approximately two inches in length, and was visible from a "normal social" distance; there are no photographs or other narrative, testimonial descriptions of Mountford's injury. In light of the scant relevant evidence presented that Mountford's injury amounted to a "serious, permanent disfigurement," we believe that it was highly probable that Dr. Walczak's irrelevant testimony had a substantial influence on the jury's verdict. Therefore, we cannot say that the circuit court's error in admitting the irrelevant testimony of Dr. Walczak was harmless. Accordingly, Malufau's conviction of assault in the first degree must be vacated.

### B.

Malufau further argues that the prosecution presented insufficient evidence to convict him of assault in the first degree. Because we are vacating Malufau's conviction on the basis of the circuit court's erroneous admission of Dr. Walczak's irrelevant testimony, the question arises whether we must address Malufau's argument regarding the sufficiency of the evidence. The ICA recently discussed this issue as follows:

While the [Hawai'i] and United States Supreme Courts have yet to grapple with this precise issue, some jurisdictions have held that challenges based upon sufficiency of the evidence must always be decided on appeal, despite the court's reversal on other grounds. Other courts disagree, holding that it is not necessary to review the sufficiency of the evidence when a case is reversed and remanded for a new trial due to trial error. Still other courts have decided to review sufficiency of the evidence

challenges as a matter of policy, although not required to do so under double jeopardy principles.

*State v. Tucker,* 10 Haw.App. 73, 96–97, 861 P.2d 37, 49 (order denying appellant's motion for reconsideration) (citations omitted), *cert. denied,* 75 Haw. 582, 863 P.2d 989 (1993).

■ With the issue now before us, we hold that challenges to the sufficiency of the evidence must always be decided on appeal. This is because "the Double Jeopardy Clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support a conviction." *Id.* at 95, 861 P.2d at 49 (citing *State v. Hamala,* 73 Haw. 289, 834 P.2d 275 (1992)).

A related issue raised in *Tucker* is whether appellate courts should consider all of the evidence that was admitted at trial or only the evidence that should have been admitted in determining whether the prosecution presented sufficient evidence to sustain a conviction. In *Tucker,* the ICA applied the federal rule enunciated in *Lockhart v. Nelson,* 488 U.S. 33, 42, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988), that "the Double Jeopardy Clause does not bar a retrial where *all* the evidence offered by the [prosecution] and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict." *Tucker,* 10 Haw.App. at 97–98, 861 P.2d at 50 (citing *Lockhart, supra*) (emphasis in original). The ICA, however, did not consider whether a different rule might apply under the double jeopardy clause of the Hawai'i Constitution. Haw. Const. art I, § 10. Although we have not expressly addressed the issue, some of the prior case law in this jurisdiction suggests that we might follow a rule whereby sufficiency of the evidence is reviewed based only on the evidence that was properly admitted at trial. *See, e.g., State v. Bannister,* 60 Haw. 658, 660, 594 P.2d 133, 135 (1979) (reversing theft conviction for insufficiency of the evidence where the only evidence in support of one element of the offense was improperly admitted hearsay testimony); *State v. Ofa,* 9 Haw.App. 130, 142, 828 P.2d 813, 819 (1992) (reversing DUI conviction for insufficiency of the evidence where the only evidence in support of one element

of the offense were improperly admitted intoxilyzer test results); *but see State v. Arakaki*, 7 Haw.App. 48, 58–59, 744 P.2d 783, 789 (1987) (vacating DUI conviction and remanding for new trial where intoxilyzer test results were improperly admitted).

In the instant case, we need not decide whether to adopt a rule different than the federal rule set forth in *Lockhart* because under either rule there was insufficient evidence to support Malufau's conviction of assault in the first degree.

■ In considering the sufficiency question

the evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was tried before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*State v. Okumura*, 78 Hawai'i 383, 403, 894 P.2d 80, 100 (1995) (quoting *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)).

As noted above, the prosecution attempted to prove that Malufau caused "serious, permanent disfigurement" to Mountford based on a scar on Mountford's face. In *State v. Silva*, 75 Haw. 419, 864 P.2d 583 (1993), we discussed the types of facial scars that could constitute "serious, permanent disfigurement":

According to the *Random House College Dictionary* 380 (1979), a "disfigurement" is, in relevant part, "something that disfigures, as a scar," while to "disfigure" is "to mar the effect or excellence of." *Id.* Therefore, it follows that even a small but noticeable scar on a person's face, for example, is a disfigurement. However, such a scar would certainly not qualify as a "serious bodily injury" under the statutory

definition nor should it. "Serious" is defined in the dictionary as "giving cause for apprehension; critical." *Id.* at 1202. Conversely, a large, permanent scar on a person's face from the corner of the eye to the jaw, for example, would clearly be considered "serious bodily injury" under the statutory definitions.

75 Haw. at 433–34, 864 P.2d at 590.

Although we did not enumerate the specific lengths or locations of facial scars that could be considered "serious"—a determination that will ordinarily be left to the factfinder to decide—we did recognize that some scars "would certainly not qualify as 'serious bodily injury' under the statutory definition." *Id.*

■ In the instant case, the only evidence in the record describing Mountford's scar established that the scar was located on his forehead, was approximately two inches in length, and was visible from a "normal social" distance. It is evident that such a scar is a far cry from "a large, permanent scar on a person's face from the corner of the eye to the jaw." *Id.* Furthermore, there are no photographs or other narrative, testimonial descriptions of Mountford's injury from which we may conclude that it resulted in anything but "a small but noticeable scar on [his] face," *id.*, which does not constitute the element of "serious, permanent disfigurement" required under HRS §§ 707–700 and –710(1). Therefore, we hold that there was insufficient evidence to convict Malufau of assault in the first degree.

Because there was insufficient evidence to support Malufau's conviction of assault in the first degree, the prosecution may not retry him on that charge. *See Hamala, supra.* However, if there was sufficient evidence presented at trial to support convictions of any included offenses, the prosecution is not precluded from retrying Malufau for those offenses. *Cf. State v. Lima*, 2 Haw.App. 19, 22–23, 624 P.2d 1374, 1377 (1981) (suggesting that when there is insufficient evidence of crime charged but sufficient evidence of included offenses, double jeopardy does not preclude retrial on the included offenses), *rev'd on other grounds*, 64 Haw. 470, 643 P.2d 536 (1982).

■ Pursuant to HRS § 701–109(4)(c) (1993), "[a]n offense is ... included when [i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest ... suffices to establish its commission." Under this subsection, assault in the second degree as defined by HRS § 707–711(1)(a) and assault in the third degree as defined by HRS § 707–712(1)(a) are included offenses of assault in the first degree.

■ There was sufficient evidence presented at trial to support convictions of either of these included offenses. First, Dr. Walczak's relevant testimony describing the two-inch laceration caused by Malufau provided substantial evidence of a "major avulsion, laceration, or penetration of the skin" sufficient to establish the "substantial bodily injury" element of assault in the second degree. *See* HRS §§ 707–700, –711(1)(a).[10] In addition, both Dr. Walczak's testimony and Mountford's testimony provided substantial evidence that Mountford suffered "physical pain, illness, or an[ ] impairment of physical condition" sufficient to establish the "bodily injury" element of assault in the third degree. *See* HRS §§ 707–700, –712(1)(a).[11] HRS § 701–109(4)(b) defines another class of included offenses as follows: "An offense is ... included when [i]t consists of an attempt to commit the offense charged or to commit an offense otherwise included therein." Under this subsection, attempted assault in the first degree as defined by HRS §§ 705–500(2) and 707–710(1) is an included offense of assault in the first degree.

The evidence that Malufau struck Mountford in the head with a glass bottle with enough force to cause a two-inch gash on his forehead provided substantial evidence[12] for a reasonable person to conclude that Malufau committed the offense of attempted assault in the first degree by "intentionally engag[ing] in conduct which was a substantial step in a course of conduct intended or known to cause" serious bodily injury. *See* HRS §§ 705–500(2), 707–710(1). Therefore,

Malufau may be retried on the included offenses of assault in the second degree, assault in the third degree, and attempted assault in the first degree, as well as any other offenses included therein.

### III.

For the foregoing reasons, we vacate Malufau's conviction of assault in the first degree and remand for retrial on the included offenses of assault in the second degree, assault in the third degree, and attempted assault in the first degree, as well as any other offenses included therein.

### OPINION ON MOTION FOR RECONSIDERATION

For the following reasons, defendant-appellant Siaosi Malufau's Motion for Reconsideration is hereby granted in part and denied in part.

On October 26, 1995, defendant-appellant Siaosi Malufau filed a timely motion for reconsideration of our opinion in *State v. Malufau,* —— Hawai'i ——, 906 P.2d 612 (1995). In his motion for reconsideration, Malufau raises the following issues: (1) in light of our holding that insufficient evidence was presented at trial to support Malufau's conviction of the charged offense, assault in the first degree, is retrial on any and all included offenses barred by (a) the constitutional protection against double jeopardy or (b) Hawai'i Revised Statutes (HRS) § 701–111(1)(c) (1993); and (2) assuming that retrial may be permitted for some included offenses, is retrial nonetheless barred with respect to the included offense of attempted assault in the first degree?

For the reasons set forth below, we hold (1) that neither the constitutional protection against double jeopardy nor HRS § 701–111(1)(c) bars retrial on "lesser" included offenses after a determination on appeal that insufficient evidence was presented at trial to

10. *See supra* note 2.

11. *See supra* note 2.

12. Dr. Walczak's testimony regarding what would have happened if Mountford's wounds had not been treated would have also been relevant to this issue. *See supra* note 6.

support a conviction, and (2) that retrial is barred with respect to the charge of attempted assault in the first degree because attempted assault in the first degree is not a "lesser" included offense of assault in the first degree. Accordingly, we grant in part and deny in part Malufau's motion for reconsideration and vacate the portion of our opinion that held that Malufau could be retried on the charge of attempted assault in the first degree.

## I.

The facts stated in our opinion filed on October 18, 1995 need not be reiterated.

 Under the United States Constitution's double jeopardy clause,[1] although a defendant cannot be retried for an offense after an appellate court has determined that insufficient evidence to support a conviction of that offense was presented at trial, *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978),

> [i]t is well established [that] if an appellate court deems the evidence insufficient as a matter of law to support a jury's guilty verdict on a greater offense but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment of conviction on that lesser included offense. *See, e.g., United States v. Franklin*, 728 F.2d 994, 1000–01 (8th Cir. 1984); *United States v. Ellsworth*, 647 F.2d 957, 965 (9th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982); *DeMarrias v. United States*, 453 F.2d 211, 215 (8th Cir.1972); *see also Morris v. Mathews*, 475 U.S. 237, 247, 106 S.Ct. 1032, 1038, 89 L.Ed.2d 187 (1986)[.]

*United States v. Cavanaugh*, 948 F.2d 405, 409 (8th Cir.1991). *See also United States v. Dickinson*, 706 F.2d 88, 93 (2d Cir.1983); *Dickenson v. Israel*, 644 F.2d 308, 309 (7th Cir.1981); *Government of the Virgin Islands v. Josiah*, 641 F.2d 1103, 1108 (3d Cir.1981).

Furthermore, most state courts have followed this rule. *See, e.g., Evans v. State*, 568

So.2d 878, 880 (Ala.Crim.App.1990); *State v. Eliason*, 25 Ariz.App. 523, 544 P.2d 1124, 1130 (1976); *People v. Tubby*, 34 Cal.2d 72, 207 P.2d 51, 56 (1949); *People v. Codding*, 191 Colo. 168, 551 P.2d 192, 193–94 (1976); *State v. Grant*, 177 Conn. 140, 411 A.2d 917, 920–21 (1979); *People v. Oliver*, 38 Ill.App.3d 166, 347 N.E.2d 865, 868 (1976); *Ritchie v. State*, 243 Ind. 614, 189 N.E.2d 575, 576–79 (1963); *State v. Lampman*, 342 N.W.2d 77, 81 (Iowa Ct.App.1982); *Goddard v. State*, 458 So.2d 230, 234 (Fla.1984); *State v. Moss*, 221 Kan. 47, 557 P.2d 1292, 1295 (1976); *State v. Byrd*, 385 So.2d 248, 251–52 (La.1980); *Brooks v. State*, 314 Md. 585, 552 A.2d 872, 880 (1989); *People v. Hoffmeister*, 394 Mich. 155, 229 N.W.2d 305, 309, *reh'g denied*, 394 Mich. 944, 230 N.W.2d 270 (1975); *State v. Jackson*, 198 Minn. 111, 268 N.W. 924, 926 (1936); *State v. Gunn*, 89 Mont. 453, 300 P. 212, 217 (1931); *State v. Haynie*, 116 N.M. 746, 867 P.2d 416, 417–18 (1994); *People v. Monaco*, 14 N.Y.2d 43, 248 N.Y.S.2d 41, 197 N.E.2d 532, 535 (1964); *State v. Porello*, 138 Ohio St. 239, 34 N.E.2d 198, 200 (1941); *Kilpatrick v. State*, 75 Okla.Crim. 28, 128 P.2d 246, 249 (1942); *State v. Jackson*, 40 Or.App. 759, 596 P.2d 600, 602 (1979); *State v. Eiseman*, 461 A.2d 369, 384 (R.I.1983); *State v. Brown*, 836 S.W.2d 530, 544 (Tenn. 1992); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex.Crim.App.1993); *State v. Plakke*, 31 Wash.App. 262, 639 P.2d 796, 799–800 (1982), *overruled on other grounds by State v. Davis*, 35 Wash.App. 506, 667 P.2d 1117 (1983); *State v. Sorrentino*, 31 Wyo. 129, 224 P. 420, 426, *reh'g denied*, 31 Wyo. 499, 228 P. 283 (Wyo.1924).

The rationale for this rule is explained by Professors LaFave and Israel as follows:

> [W]hen the evidence is found insufficient on appeal only as to the greater offense then it is clear that had the trial judge acted properly the lesser offense would have gone to the jury and would have certainly resulted in conviction, as is reflected by the fact that the jury's actual

---

1. The fifth amendment to the United States Constitution provides in pertinent part: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb[.]" The double jeopardy clause of the United States Con-

stitution is applicable to the states through the fourteenth amendment to the United States Constitution. *See State v. Lessary*, 75 Haw. 446, 453 n. 9, 865 P.2d 150, 154 n. 9 (1994).

verdict shows that the jury found the existence of every element of the lesser-included offense as well.

3 W. LaFave & J. Israel, *Criminal Procedure* § 24.4, at 91–92 (1984) (footnotes and quotation marks omitted).

The United States Supreme Court has embraced an analytical approach under the double jeopardy clause that is consistent with the above explanation in that it seeks to place the defendant in the position that he or she would have been had the trial court acted properly. *See Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). In *Lockhart*, the Court justified its holding that "where the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial," *id.* at 34, 109 S.Ct. at 287,[2] in part on the basis that the holding "merely recreates the situation that would have been obtained if the trial court had" not erroneously admitted evidence. *Id.* at 42, 109 S.Ct. at 291. In addition, the Court reaffirmed the principle that the double jeopardy clause does not bar retrial after a conviction is overturned on the basis of trial error. *Id.* at 38, 109 S.Ct. at 289–90.

"From this, it would seem to follow that if the appellate court has also found some error in the trial [in addition to a determination that insufficient evidence to support a conviction of the greater offense was presented at trial], then it is proper to remand the case for retrial on the lesser included offense." 3 W. LaFave & J. Israel, *Criminal Procedure* § 24.4, at 91–92 (1984) (footnotes omitted).

Although not expressly adopting this rationale, a number of decisions from other jurisdictions have approved procedures allowing retrial on lesser included offenses following appellate determinations that insufficient evidence to support convictions of greater offenses had been presented at trial. *See, e.g.,*

*Beverly v. Jones*, 854 F.2d 412, 416, *reh'g denied*, 861 F.2d 727 (11th Cir.1988), *cert. denied*, 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989); *Ex parte Beverly*, 497 So.2d 519, 524 (Ala.1986); *State v. Garcia*, 114 N.M. 269, 837 P.2d 862, 869 (1992); *State v. Alston*, 26 N.C.App. 418, 216 S.E.2d 416, 418–19 (1975); *State v. Maupin*, 859 S.W.2d 313, 317–18 (Tenn.1993); *Gorham v. Commonwealth*, 15 Va.App. 673, 426 S.E.2d 493, 496–97 (1993).

Thus, we hold that remanding a case for retrial on lesser included offenses following an appellate determination that insufficient evidence to support a conviction of a greater offense was presented at trial does not offend the double jeopardy clause of the United States Constitution.

Moreover, we note that case law in this jurisdiction has followed the principles underlying the above holding, namely that (1) if an appellate court determines that the evidence presented at trial was insufficient to support a conviction of a greater offense but sufficient to support a conviction of a lesser included offense, the court may remand for entry of judgment of conviction on the lesser included offense, *see, e.g., State v. Arlt*, 9 Haw.App. 263, 278, 833 P.2d 902, 910 (1992); *cf. State v. Elliott*, 77 Hawai'i 309, 313, 884 P.2d 372, 376 (1994) (remanding for entry of judgment of conviction on lesser included offense where indictment failed to allege all of the essential elements of the greater offense for which a conviction was obtained), and (2) the double jeopardy clause does not bar retrial after a conviction is overturned on the basis of trial error. *See, e.g., Domingo v. State*, 76 Hawai'i 237, 245, 873 P.2d 775, 783 (1994).

Thus, although "we are not bound to give provisions of the Hawai'i Constitution[3] the same interpretations as those given un-

---

2. As noted in our October 18, 1995 opinion, we need not decide in the instant case whether the *Lockhart* holding applies under article I, section 10 of the Hawai'i Constitution or whether "a rule whereby sufficiency of the evidence is reviewed based only on the evidence that was properly admitted at trial" is applicable. *See Malufau*, at ——, 906 P.2d at 618–19. Our citation of the

*Lockhart* holding herein is not meant to imply a decision on that issue one way or another.

3. Article I, section 10 of the Hawai'i Constitution provides in pertinent part: "No person shall ... be subject for the same offense to be twice put in jeopardy[.]"

der the United States Constitution," *State v. Lessary,* 75 Haw. 446, 453, 865 P.2d 150, 154 (1994), we believe that the foregoing analysis represents a sensible approach that "adequately preserve[s] the rights and interests sought to be protected," *id.,* and we therefore hold that remanding a case for retrial on lesser included offenses following an appellate determination that insufficient evidence to support a conviction of a greater offense was presented at trial does not offend the double jeopardy clause of the Hawai'i Constitution.

## II.

The next question raised in Malufau's motion for reconsideration is whether HRS § 701–111(1)(c) extends greater protection against retrial in this situation than do the double jeopardy clauses of the United States and Hawai'i Constitutions. HRS § 701–111(1)(c) provides in pertinent part:

> Although a prosecution is for a violation of a different statutory provision ..., it is barred by a former prosecution under any of the following circumstances:
>
> (1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701–110(3) and the subsequent prosecution is for:
>
> . . . .
>
> (c) An offense based on the same conduct[.]

There is no question that the included offenses for which we directed retrial are based on the same conduct as the offense for which Malufau was prosecuted in the first trial. Thus, the issue is whether "[t]he former prosecution resulted in an acquittal ... or in a conviction as defined in section 701–110(3)." HRS § 701–110(3) (1993) provides in pertinent part: "There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated[.]" Because we vacated Malufau's conviction, the former prosecution did not

result in a "conviction" as defined in HRS § 701–110(3).

The issue thus narrows to whether our reversal of Malufau's conviction on the basis of evidentiary insufficiency is tantamount to an "acquittal." Malufau cites to language in HRS § 701–110(1) which states that "[t]here is an acquittal if the prosecution resulted in a ... determination by the court that there was insufficient evidence to warrant a conviction." In the context of the statute, however, it is evident that the quoted language refers to a determination by the trial court, prior to submission of the case to the jury, that there was insufficient evidence, *i.e.,* a judgment of acquittal.

To interpret the statute otherwise would lead to absurd results. For example, in the instant case, if Malufau had been convicted of assault in the second degree, we would have held that there was sufficient evidence to sustain the conviction, but would have remanded for a retrial in light of the circuit court's erroneous admission of Dr. Walczak's testimony. It would be absurd to hold that because the jury convicted Malufau of the greater offense, assault in the first degree, he cannot be retried, but must instead be set free.

■■■■■ " 'The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction and illogicality.' " *Sato v. Tawata,* 79 Hawai'i 14, 23, 897 P.2d 941, 950 (1995) (Ramil, J., dissenting) (quoting Sutherland Statutory Construction § 46.07 at 131 n. 8 (5th ed. 1992)). Thus, we hold that an appellate determination that insufficient evidence to support a conviction was presented at trial does not constitute an "acquittal" as that term is used in HRS § 701–111(1).[4] Consequently, retrial on lesser included offenses following an appellate determination that insufficient evidence to support a conviction of a greater offense was presented at trial does not violate HRS § 701–111(1)(c).

---

4. Of course, as noted above and in our original opinion in this case, the double jeopardy clauses of the United States and Hawai'i Constitutions

bar retrial on an offense after an appellate determination that insufficient evidence to support a conviction of that offense was presented at trial.

### III.

A more difficult question is presented with respect to whether retrial on the offense of attempted assault in the first degree should be allowed. Pursuant to HRS § 701–109(4) (1993), "[a] defendant may be convicted of an offense included in an offense charged in the indictment or information." The indictment in the instant case charged Malufau with assault in the first degree and, according to HRS § 701–109(4)(b), attempted assault in the first degree is an included offense of assault in the first degree. Consequently, we reject Malufau's argument that a deficiency in the indictment precludes retrial on the charge of attempted assault in the first degree.

On the other hand, although attempted assault in the first degree is an included offense of assault in the first degree, it is "an offense of the same class and grade as" assault in the first degree. HRS § 705–502 (1993). In that sense, it is not a "lesser" included offense. In our view, it would be inequitable and contrary to the purposes of the double jeopardy clause to allow a defendant to be placed in jeopardy of being convicted of an "included" offense of the same class and grade as an offense for which the defendant cannot be retried due to the failure of the prosecution to present sufficient evidence at trial to support a conviction thereof. Thus, we emphasize that our holding that remanding a case for retrial on *lesser* included offenses following an appellate determination that insufficient evidence to support a conviction of a greater offense was presented at trial does not offend the double jeopardy clause of the Hawai'i Constitution applies only when the included offense at issue is "lesser" in the sense that it is an offense of a class and grade lower than the greater offense.

For these reasons, we hold that Malufau may not be retried for attempted assault in the first degree. Accordingly, we grant in part and deny in part Malufau's motion for reconsideration and vacate the portion of our opinion that held that Malufau could be re-tried on the charge of attempted assault in the first degree.